## Moore v. Johnson.

(Decided March 16, 1912.)

### Appeal from Fayette Circuit Court.

1. Slander—Words not Actionable.—The words "He took five of my big steers from my pasture and left five scrub steers in their place I can't keep any sheep at all, and will have to go out of the sheep business; I had 45 sheep and have only 26 left, and Gilbert got them. Gilbert sold Stewart Jones a steer belonging to me, and it was a good one, and left a scrub steer in its place," are not actionable per se.

2. Slander—Words Actionable Per Se.—Words that clearly and unequivocally import that the person accused is guilty of some felony or other crime of such turpitude as to render him liable upon indictment to some infamous punishment, are actionable per se.

3. Slander—Words Not Actionable.—Words that in their usual and ordinary meaning as commonly understood do not clearly import the commission of a punishable crime involving moral turpi-

tude, are not actionable per se, and cannot be made actionable by an innuendo.

4. Slander—Innuendo.—The innuendo in slander pleading is au averment setting forth the meaning the pleader believed should be given to the words charged, but it cannot enlarge the meaning of the words or give to them an actionable quality they do not possess.

5. Slander—Special Damages.—Words, although not per se actionable, that are spoken concerning the business, office or profession of another, if they impute dishonesty or unfitness or incompetency may be made the basis of an action to recover special damages for an injury to the person in his business, trade or calling.

6. Slander—Inducement.—Words that standing alone are not susceptible of a criminal meaning, but that are spoken under surroundings or circumstances that import to them such a meaning may be made the basis of an action, if all the extrinsic facts and circumstances relied on to impart to the words an actionable quality are stated in the petition.

FORMAN & FORMAN, M. D. FORMAN for appellant.

GEO. C. WEBB for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In this action to recover damages for alleged slander, the plaintiff, who is now the appellant, in the first paragraph of his petition against the defendant, now appellee, averred that

"The defendant, in the presence and hearing of a certain person other than the plaintiff, falsely and maliciously spoke of and concerning plaintiff these words:

" 'He took five of my big steers from my pasture and left five scrub steers in their place. I can't keep any sheep at all; and will have to go out of the sheep business. I had 45 sheep, and have only 26 left, and Gilbert got them. Gilbert sold Stuart Jones a steer that belonged to me; and it was a good one, and he left a scrub in his place.'

"The said defendant thereby meaning, and said third person to whom said words were spoken so understood defendant to mean, that the plaintiff had criminally converted said cattle to his own use without defendant's consent, and had committed the crime of stealing 19 head of sheep."

In the second paragraph, he averred that:

"The defendant falsely and maliciously spoke of and concerning plaintiff these words:

" 'One of my sheep got away, and I sent Lewis after it, but he could not get it; and everytime Gilbert moves his sheep through my farm I lose some, and never get them back, and I have lost about 17 sheep this way.'

"Thereby meaning, and said person to whom defendant then spoke so understood defendant to mean, that plaintiff had committed the crime of stealing 17 head of sheep."

In the third paragraph, he averred that:

"The defendant falsely and maliciously spoke of and concerning the plaintiff these words:                    .

" 'I will give a libel if ever I had anything to get on your farm and got it back; I have lost 20 sheep this way.'

"Plaintiff says that defendant did thereby mean, and said person to whom defendant so spoke understood defendant to mean that plaintiff had committed the crime of stealing 20 head of sheep."

In an amended petition, the plaintiff amended the first paragraph of his petition, and averred that:

"The defendant falsely and maliciously spoke of and concerning plaintiff these words:

" 'Gilbert Moore has been stealing my stock ever since he has been down here. He has no fencing, and my fence is a good one, so they always get over Moore's fence, and when he comes to get them out he drives off some of mine every time.'

"The defendant thereby meaning, and the person to whom said words were spoken so understood, defendant to mean that the plaintiff had committed the crime of grand larceny."

The rulings of the court, were in substance that the plaintiff stated a cause of action in his amended petition, upon which there was a trial and verdict for defendant, but did not state a cause of action in either of the counts of his original petition, and we will treat the action of the lower court as in effect sustaining a general demurrer to the petition.

Counsel for appellee insists that the lower court was correct in holding that a cause of action was not stated in either of the three paragraphs set out in the petition, as the language charged did not impute in its natural and ordinary meaning the commission of any crime or offense involving moral turpitude, and the petition did

not aver any special damage that Moore had sustained by reason of the publication of the words. On the other hand, it is argued for appellant that although no claim of special damage was set out, the language charged imported according to its reasonable meaning the commission of the crime of larceny and was made actionable by the averments of the petition that in speaking the words "defendant did thereby mean, and said person to whom said defendant spoke understood defendant to mean, that plaintiff had committed the crime of stealing or the crime of grand larceny."

Language is only actionable per se when it "clearly and unequivocally imports that the person accused is guilty of some felony or other crime of such turpitude as to render him liable upon indictment to some infamous punishment." McNamana v. Shannon, 8 Bush, 557; Tharp v. Nolan, 119 Ky., 870; Wooten v. Martin, 140 Ky., 781. This being the test to which language relied on as being actionable per se must be subjected, we think it is obvious that the words set out in the petition are not actionable per se, as they do not, standing alone, in their natural and ordinary meaning or in the sense in which the words used are commonly and generally understood, clearly and unequivocally import the commission of a crime involving moral turpitude. Clay v. Barclay, Sneed 67; Caldwell v. Abbey, Hardin 539; Watson v. Hampton, 2, Bibb., 319; Mills v. Taylor, 3 Bibb., 469; Martin v. Melton, 4 Bibb., 99; Brown v. Piner, 6 Bush, 518; McCauley v. Elrod, 16 Ky. Law Rep., 291; Craig v. Pyles, 101 Ky., 593; Tharp v. Nolan, 119 Ky., 870; Feast v. Auer, 28 Ky. Law Rep., 794; Curtis v. Iseman, 137 Ky., 796; Wooten v. Martin, 140 Ky., 781; Williams v. Riddle, 145 Ky., 459; Renaker v. Gregg, 147 Ky., 368. It follows, therefore, that if the petition stated a good cause of action it must be due entirely to the innuendo contained in the averment that in speaking the words Johnson intended to accuse Moore of the crime of larceny, and was so understood by those who heard him; and, to a consideration of this phase of the case we will address ourselves.

The first question that naturally arises is, can the plaintiff in an action for slander, when the words are not in themselves actionable, and there is no claim for special damages, and no averment of extrinsic matter by way of inducement, convert by innuendo non-actionable words

into actionable words by merely averring that the defendant by the use of the language charged imputed to plaintiff the commission of a crime, and the persons in whose presence and hearing the words were spoken so understood. Many words in their ordinary usage have an innocent as well as a guilty meaning, and it not infrequently happens that this class of words when spoken are intended to have an innocent meaning and are so understood, and again, are intended to have a guilty meaning and are so understood. But, when special damages are not sought and no inducement is pleaded, words that in their usual and ordinary meaning as commonly understood do not clearly and unequivocally import the commission of a punishable crime, involving moral turpitude, cannot by an innuendo be made the basis of an action for slander by the averment that the person speaking them intended to charge the commission of a crime and the person who heard them spoken so understood. It is only words that in their ordinary and usual meaning and as commonly understood clearly impute the commission of a crime involving moral turpitude that can be made actionable by averments that the speaker intended to use them in their criminal sense and they were so understood by those who heard them. Of course, when the words laid import on their face a direct and unequivocal charge of crime, an innuendo to point the meaning of the words is not needed, as the words carry with them their own unmistakable meaning. Newell on Libel and Slander, page 619. As, if A. said of B. ''he stole my horse,'' or ''he burned my barn.'' Hume v. Arrasmith, 1 Bibb., 165; Barr v. Gaines, 3 Dana, 258. But, when the criminal charge is not direct and unequivocal, and no words of fixed criminal meaning are used, if the words in their ordinary and usual meaning and as commonly understood clearly convey the idea that a charge of crime involving moral turpitude was intended, an innuendo may give to them an actionable quality. This rule is illustrated in the cases of Logan v. Steele, 1 Bibb., 593; Welsh v. Eakel, 7 J. J. Mar., 424; and Jones v. McDowell, 4 Bibb., 188. In the Logan case, the words charged were that ''he had every reason to believe that the said plaintiff had burnt the barn aforesaid.'' ''From the evidence he had concerning the burning of said barn, he, the said defendant, believed that the said plaintiff had burnt the

said barn." It was contended by appellant's counsel that the words laid in these counts were not actionable because they did not necessarily import guilt, as the barn may have been burnt by accident and not by design; but the court rejected this view, and said:

"It is now well settled that words are to be taken in that sense in which they would be understood by those who hear or read them. The judge will neither torture them into guilt nor explain them into innocence, but take them in their usual acceptation and understanding, according to their obvious import and meaning. Tested by this doctrine, the words in question are clearly actionable; they carry with them an evident imputation of guilt, and it requires a most far fetched construction to give them an innocent meaning."

In the Eakel case, the words were "You stole my corn out of the field," meaning out of the defendant's field where he had a pile of corn gathered. In considering the actionable quality of these words, the court said:

"As the words were susceptible of a two-fold meaning, one imputing a felony and the other amounting to a trespass only, it was the province of the jury to determine from the circumstances in what sense they were uttered and understood. This is a rational and legal rule as now well established by authority."

In the McDowell case, the words spoken by Jones were that "He saw the appellee, McDowell, take corn from Aaron Rainy's crib twice, and looked around to see if any person saw him measuring it." In discussing the effect of these words, the court said:

"Whether they are actionable or not turns exclusively upon the construction which may be given to them. If they imply a felony in the taking of the corn, then as they tend to subject the appellee to criminal punishment, they are most clearly actionable; but if they import nothing but a bare trespass, the appellee can not be said to have been put in danger of legal punishment, and no action can be maintained for the speaking of them. * * * That the words meant something more than a naked trespass, is evident, for if they had been the only meaning intended to be conveyed, the simple charge of taking the corn would have effected the object; but when the charge of taking is connected with the expression of the manner in which the appellee acted in taking, it shows clearly the speaking of the words intended

to communicate the idea (and that the hearers must so have understood them) that the corn was taken with a felonious intent.''

Coming now to the innuendo, if there is any principle in the law of slander that is well settled, it is that the natural and reasonable meaning of words laid can not be enlarged by an innuendo. As said in Townshend on Libel and Slander, section 335:

''It may serve for an explanation to point a meaning where there is precedent matter expressed or necessarily understood or known, but never to establish a new charge. It may apply what is already expressed, but can not add to nor enlarge nor change the sense of the previous words. If the words before the innuendo do not sound in slander, no meaning produced by the innuendo will make the action maintainable, for it is not the nature of an innuendo to beget an action. * * * The office of an innuendo is to explain, not to extend, what has gone before, and it can not enlarge the meaning of words unless it be connected with some matter of fact expressly averred.'' To the same effect is Newell on Slander and Libel, page 619; Craig v. Pyles, 101 Ky., 594; Watson v. Hampton, 2 Bibb., 319; Peters v. Garth, 20 Ky. Law Rep., 1934; Feast v. Auer, 28 Ky. Law Rep., 794; Brown v. Piner, 6 Bush, 518; Wooten v. Martin, 140 Ky., 781.

Applying now the principles of law that control this case, we think it clear that the words charged were not of such a character as that they could be made actionable by the innuendo that attempted to impute to them a defamatory meaning that the natural and reasonable sense of the words did not import. Moore may have done all that Johnson charged him with, and yet not have been guilty of any criminal offense involving moral turpitude. The law does not encourage slander suits arising from trivial remarks and it is only when a direct unequivocal criminal charge is made, which, if true, would subject the person spoken of to an indictment for a crime involving moral turpitude or to an infamous punishment that the words will be in themselves actionable (Williams v. Riddle, 145 Ky., 459), unless they are of such a character as to be made actionable by an innuendo. To this general rule there is the exception that if words not per se actionable are spoken concerning the business, office or profession of another, and they impute dishonesty or

unfitness or incompetency, an action will lie to recover special damages for the injury done to the person spoken of in his business, trade or calling. Newell on Slander and Libel, page 849; Townshend on Slander and Libel, section 198; Fred v. Traylor, 115 Ky., 94. But no effort is made to bring the words charged within the class in which an action may be maintained for the use of words not in themselves actionable by averments that the person spoken of sustained special injury in his business, office or profession, as a natural and proximate result of the speaking of the words. Another exception to the general rule that only allows an action when the words are slanderous per se or can be made so by an innuendo should perhaps be noticed, and this exception arises when words that standing alone are not susceptible of a criminal meaning or actionable per se are spoken under surroundings or circumstances that impart to them such a meaning. But when it is sought to maintain an action on this theory, the petition should by way of inducement aver all the extrinsic facts and circumstances relied on to impart to the words an actionable quality. As stated in Townshend on Slander and Libel, section 308:

"It is the office of the inducement to narrate the extrinsic circumstances which, coupled with the language published, affects its construction and renders it actionable; where standing alone and not thus explained, the language would appear either not to concern the plaintiff, or if concerning him not to affect him injuriously. This being the office of the inducement, it follows that if the language published does not naturally and per se refer to the plaintiff, nor convey the meaning the plaintiff contends for, or if it is ambiguous or equivocal, and requires explanation by some extrinsic matter to its relation to the plaintiff, and make it actionable, the complaint must allege, by way of inducement, the existence of such extrinsic matter." * * * Newell on Libel and Slander, 2d. Ed., page 603.

But, it is insisted that it was for the jury and not the court to say whether the words used charged an offense which could be made the basis of an action. Upon this point the rule, as we understand it, is that where there is reasonable doubt as to the actionable quality of the words, the case should go to the jury; but, if the words in their ordinary and natural meaning are not fairly

susceptible of a construction that would make them actionable, it is the duty of the court to sustain a demurrer or take the case from the jury.

Being of the opinion that the words alleged to have been spoken by Johnson did not in their natural or ordinary meaning charge the commission of an offense involving. moral turpitude, and that their meaning could not be enlarged by the innuendo, it follows that the lower court correctly ruled that the petition did not state a cause of action, and the judgment is affirmed.