## Smallwood v. York.

(Decided February 25, 1915.)

### Appeal from Pike Circuit Court.

1. Libel and Slander—Words Actionable Per Se.—Spoken words are actionable per se only when they clearly and unequivocally import that the person spoken of is guilty of some felony or other crime of such turpitude as to render him liable upon indictment to some infamous punishment.

2. Libel and Slander—Actionable Words When Spoken of Employment, Profession or Trade.—Words spoken of a person in respect to his employment, profession or trade, to be actionable, must be spoken of some business employment, profession or trade in which the complaining party is engaged and in the conduct of which he has sustained some injury on account of the slanderous words.

3. Libel and Slander—Words Affecting Office—When Actionable—Juror.—The office in respect to which an injury may be sustained by slanderous words means some public position with honors, emoluments or profits, the enjoyment of which may be affected by the words. A juror does not hold such an office as this. He holds no office or employment that could be affected in a pecuniary way by slanderous words.

4. Libel and Slander—Difference Between Libel and Slander.—Many words that would be sufficient to furnish the basis of an action for libel would not sustain an action for slander, as any written or printed words are libelous that tend to disgrace the person about whom they are written or to render him odious, ridiculous or contemptible.

5. Libel and Slander—Juror.—It was not actionable to say of a juror that he returned a verdict which he knew to be wrong and that was a travesty on justice and a shame and·disgrace to the community, as they did not impute to the juror the commission of any offense for which he might be indicted and punished.

6. Jury—Exemption from Punishment.—A juror cannot be subjected to punishment for any decision he may render, and the motives that influence him cannot be made the subject of a criminal investigation unless, as provided in Section 2256 of the Kentucky Statutes, he takes, or agrees to take, a bribe to give, or refrain from giving, a verdict, or is influenced by corrupt favoritism or partiality.

7. Jury—Action for Slander by.—If words are spoken generally of a jury, or applied to a jury as a whole, that impute to the jury the commission of some crime involving moral turpitude or a violation .of the Statute for which the individual members might be indicted and punished, an action will lie by any member of the jury, although no one of them was designated by name in the spoken words.

8. Libel and Slander—Privilege—Attorney.—The privilege that protects an attorney extends only to speeches made by him that are pertinent to the case in which he is engaged when the remarks are made. If he goes entirely out of the record to indulge in slanderous expressions either against a party, witness or third person, which have no relation to the cause or subject-matter of the inquiry, he may be sued in slander.

J. E. CHILDERS for appellant.

HOBSON & HOBSON for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The plaintiff, who is the appellant here, brought suit against the defendant, now appellee, to recover damages for an alleged slander. The defendant is an attorney-at-law, and the petition charged that in the courthouse, while making the opening statement in a case, he falsely and maliciously spoke of and concerning the plaintiff the following words, to-wit:

"In this case the only question is, whether a corporation can get justice in Pike County. No longer than yesterday I heard a case tried in this court of Carl Massy against the Allegheny Coke Company and John Fuller in which the jury turned in a verdict under their oaths against the Allegheny Coke Company and found in favor of John Fuller, which they knew to be wrong. That verdict was a travesty on justice and a shame and a disgrace to the community."

It was averred "that the plaintiff was, at the time the words were spoken, one of the regular jurors of the court, and as such had been selected and sworn as required by law to try the said case of Carl Massy against the Allegheny Coke Company and John Fuller, and, as such juror, had tried said case and returned a verdict against the said Allegheny Coke Company and for John Fuller; that this defendant as an attorney-at-law represented said Allegheny Coke Company in said case, and, chafing under the defeat of his client, made said statement for the express and only purpose of insulting and slandering the jury that tried said case of Massy against the Allegheny Coke Company; that said words were used by defendant in stating the case of Coleman against the C. & O. Railway; and had no relevancy to or place in said case, and defendant purposely digressed from said case to insult and slander the jury that tried the Allegheny Company case."

And further averred "that defendant meant to and did charge the plaintiff with the crime of perjury; and further meant to charge that he had wilfully and knowingly violated the oath that he had taken to try the issues joined and a true verdict render in said case and had returned a verdict which he knew to be wrong. That said words were spoken in the courthouse and in the presence of the court, the jurors and the bar and a large crowd of people there assembled; that said words were spoken of plaintiff as a juror, an officer of the court, and were used to falsely leave the impression on those who heard them that plaintiff was a perjurer and had been false to his trust as an officer of the court; that, by reason of the use of said words by defendant as aforesaid, the plaintiff has suffered great disgrace, humiliation and loss of character and reputation, to his great damage."

This petition was dismissed on demurrer, and the plaintiff is here on appeal.

We think it was highly improper for the defendant, as an attorney and officer of the court, to go out of his way and assail in the manner alleged a jury because they had, in another case in which he was also engaged as an attorney, returned a verdict against his client, and, considering the place and circumstances under which the words were spoken, it may well be admitted that they were calculated to wound the feelings of the plaintiff and subject him to at least some measure of ridicule and reproach.

And we are also satisfied that appellee should not be protected in this assault on the jury by the law of qualified or absolute privilege. The fact that he was an attorney, and that the words complained of were spoken in the course of an argument or statement he was making, do not furnish any excuse for his attack of the jury that returned the verdict in another suit pending in the court. The privilege that protects an attorney extends only to speeches made by him that are pertinent to the case in which he is engaged when the remarks are made. It fortunately does not license him to go entirely out of the record and assail other persons having no manner of connection with the case in which he is employed. If it did, it would place in the power of an attorney the right to malign at will those who had incurred his displeasure and permit him to defame and scandalize all who might come within the circle of his enmity. The extent to which an attorney is privileged from suit for slander and the limitation upon this privilege are well stated in Sebree v. Thompson, 126 Ky., 223, where the court, after setting down the privileges of an attorney, said he would not be protected if he availed himself ''of his situation to gratify private malice by uttering slanderous expressions, either against a party, witness, or third person, which have no relation to the cause or subject matter of the inquiry.'' To the same effect are: Morgan v. Booth, 13 Bush, 480; Gaines v. Aetna Insurance Co., 104 Ky., 695; Stewart v. Hall, 83 Ky., 375; Monroe v. Davis, 118 Ky., 806.

The words spoken not being privileged, the remaining question is, are they actionable? On behalf of the appellant it is insisted that they are actionable *per se;* or, if not, they are actionable because spoken of the appellee in respect to an office.

In Williams v. Riddle, 145 Ky., 459, it is said that ''in the following cases only were words slanderous, or actionable *per se:* 1. Words falsely spoken imputing the commission of a crime involving moral turpitude, for which the party might be indicted and punished; 2. Words imputing an infectious disease, likely to exclude him from society; 3. Words imputing unfitness to perform the duties of an office or employment; 4. Words prejudicing him in his profession or trade; 5. Words tending to disinherit him. In all other cases spoken words are

either (a) not actionable at all, or only actionable (b) on proof of special damages.''

Adopting this definition of actionable words, we think it is apparent that the words charged must come under the first class or they cannot be treated as actionable. Or, to put it in another way, unless the words spoken impute the commission of a crime involving moral turpitude for which the jurors, including the plaintiff, might be indicted and punished, they do not furnish the basis for a suit for slander, although we are quite sure that if words were spoken generally of a jury or applied to a jury as a whole that did impute to the jury a violation of Section 2256 of the statute or the commission of some crime involving moral turpitude for which the individual members might be indicted and punished, an action would lie by any member of the jury, although no one of them was designated by name in the spoken words. Levert v. Daily States Publishing Co., 123 La., 594, 23 L. R. A. (N. S.), 726; Palmerlee v. Nottage, 119 Minn., 351, 42 L. R. A. (N. S.), 870; Lathrop v. Sundberg, 55 Wash., 144, 25 L. R. A. (N. S.), 381.

The substance of the words spoken is that the jury in the Allegheny Coke Co. case returned a verdict which they knew to be wrong. But these words, however, reprehensible, did not impute to the jury the commission of any offense for which they might be indicted and punished. So far as we are advised, except in the instance we will presently point out, a juror cannot be subjected to punishment for any decision he may render. He is not answerable to any other tribunal for his finding, and the motives that influenced him cannot be made the subject of a criminal investigation. Bishop's New Criminal Law, Vol. 1, Sec. 462; 5 Johnson N. Y., 282.

It is, however, provided in Section 2256 of the Kentucky Statutes that ''If a juror in any case shall take or agree to take anything, directly or indirectly, to give or refrain from giving his verdict, or shall, from favoritism or corrupt partiality, give or refrain from giving his verdict, and shall be thereof convicted, such juror shall not thereafter serve on any jury and shall be fined one hundred dollars and a sum equal to ten times the amount received or agreed to be received.''

If, therefore, the words spoken had charged this jury with having taken or agreed to take anything, directly or indirectly, to give a verdict, or that its verdict was

given from corrupt favoritism or corrupt partiality, then they would be actionable as imputing moral turpitude involving an offense for which the members of the jury might be indicted and punished. But we do not think the words spoken can be fairly construed into a charge that the jury was guilty of the offense described in this statute. The petition avers that the appellee meant to and did charge the plaintiff, as one of the jury, with the crime of perjury, and it is argued that the meaning of the words spoken was that the plaintiff and the other members of the jury had committed the crime of perjury by violating the oath they had taken to try the issues joined and a true verdict render, by returning a verdict that they knew to be wrong. But it does not aver that appellee, by the use of the words spoken, intended to charge that the jury was influenced by corrupt favoritism or by corrupt partiality to give the verdict, although it would seem to be a more reasonable inference from the words spoken that the speaker had in mind to charge the jury with corrupt favoritism or partiality rather than with the commission of the crime of perjury.

But, however this may be, the meaning of the words spoken cannot, of course, be enlarged by innuendo. Moore v. Johnson, 147 Ky., 584. The words are to be taken in their usual and ordinary acceptation, and so treating them, we do not think they can be construed as either charging perjury or corrupt favoritism or corrupt partiality. If the jury returned a verdict they knew to be wrong, they, of course, committed an offense against the administration of justice and did a wrong to the Allegheny Coke Co. But this wrong they might have done without being guilty of perjury or being influenced by corrupt favoritism or partiality for Massy. And so we think the words spoken are not actionable *per se*.

It is, however, insisted that, although the words may not be actionable *per se*, they are actionable because spoken of the appellant in respect to an office, and the attempt, therefore, is made to bring the words within the class that makes it actionable to impute unfitness to perform the duties of an office or employment. But we think the position of a juror is not an office or employment within the meaning of these words as employed in the quotation from Williams v. Riddle. The words "employment, profession or trade" mean some business, employment, profession or trade in which the complaining

party is engaged, and in the conduct of which he has sustained some injury on account of the slanderous words; and the word "office" means some public position with honors, emoluments or profits, the enjoyment of which may be affected by the words, and a juror does not hold such an office as this. His duties are transitory and subject to be terminated at any time. He is merely selected out of the body of the people for the purpose of discharging at the will of the court responsible and honorable public duties that the State has a right to call upon its citizens to perform. He is for the time being an officer of the court, but holds no office or employment that could be affected in a pecuniary way by slanderous words. Townshend on Slander and Libel, pages 287 and 311; Newell on Slander and Libel, page 168.

In Byers v. Martin, 2 Colo., 605, 25 Am. Rep., 755, the court held that an action for libel might be maintained by a juror against a newspaper that, in the course of an article commenting on a trial, said: "We are not a little surprised at Judge Wells' lenient charge 'n the case. We are still more so at the infamous verdict of this jury. * * * We cannot express the contempt which should be felt for these twelve men, who have thus not only offended public opinion, but have done injustice to their own oaths," saying that the words were actionable under the statute defining libel, "as well as upon general principles, as words spoken of one in the execution of his office."

While not inclined to agree with the conclusion of the court that the words were actionable because written of the juror in connection with his office, their actionable character might safely be put upon the ground that they were libelous as many words that would be sufficient to furnish the basis of an action for libel would not sustain an action for slander.

In Riley v. Lee, 88 Ky., 603, the general rule upon the subject of libelous words is thus stated: "So it may be regarded as thoroughly settled that if the written or printed publication tends to degrade the person about whom it is written or printed—that is, if it tends to reduce his character or reputation in the estimation of his friends or acquaintances or the public, from a higher to a lower grade, or if it tends to disgrace him—that is, if it tends to deprive him of the favor and esteem of his friends or acquaintances or the public, or tends to render

him odious, ridiculous or contemptible in the estimation of his friends or acquaintances or the public, it is, *per se,* actionable libel."

And so if these words had been written and published concerning the jury, we think they would clearly be libelous on the complaint of any of the jury. But spoken words are only actionable *per se* when "they clearly and unequivocally import that the person accused is guilty of some felony or other crime of such turpitude as to render him liable upon indictment to some infamous punishment." Moore v. Johnson, 147 Ky., 584. And, as we have seen, the words spoken do not come within the scope of this definition, and, therefore, cannot be made the basis of an action for slander.

The judgment is affirmed.