[Civ. No. 12554.   Second Appellate District, Division Two.—August 9, 1940.]

ALEXANDER NORAL, Appellant, v. HEARST PUBLICATIONS, INCORPORATED (a Corporation), Respondent.

Gallagher, Wirin & Johnson for Appellant.

Lawler, Felix & Hall and A. Laurence Mitchell for Respondent.

MOORE, P. J.—Plaintiff's action having been dismissed after the general demurrer to his complaint as amended had been sustained, he takes this appeal.

In a lengthy complaint, plaintiff alleges in substance that he is the president and chief official of the Workers Alliance of California; that he has conducted the affairs of his office in accordance with its constitution and by-laws and with honesty and fidelity; that there are only three paid officials in the organization and that $50 per week is the salary divided among the three; that on April 29, 1939, the said three officials presented before a committee of the state senate a factual statement, a copy of which is attached to the complaint; that about the same time the officials on behalf of the said Alliance sent an "open letter" contained in said "Exhibit A" to all California state legislators including Senator Metzger, chairman of said senate committee; that by reason of said open letter, said Metzger and the defendant knew that they were referring to the three paid officials of the Alliance when they referred to "officials of the Workers Alliance"; that the defendant well knowing the premises and with the intent to hold him up to shame and public obloquy and to deprive him of the confidence and good repute of the members of the Alliance and of the public at large, and with the intent to impute to the plaintiff the crime of embezzlement or larceny, did publish, in defendant's newspaper words contained in a false and untrue article entitled "STATE MAY PROBE RED ACTIVITY HERE", purporting to be a quotation of statements, made May 30, 1939, at Los Angeles, by California State Senator Jack Metzger, chairman of the state senate committee investigating pressure groups;

"That said article contained among others, the following false and scandalous words which the readers of the paper read and understood to be about and concerning the plaintiff .... .ity as a paid official of the state organization of ers' Alliance, namely, State President of said Alwit:

" 'Californians are rapidly becoming aroused to the folly of taxing citizens to finance Moscow propaganda.' This occurs under the present set up, he explained, because taxpayers pay the relief bill for the 31,000 Workers' Alliance members and their officials divert their membership dues to further Communist agitation under direct orders from the Third Internationale headquarters in Russia."

In subsequent paragraphs of the pleadings, plaintiff pleads matters of inducement and innuendo for the purpose of removing doubt as to whether or not the published article referred to plaintiff and for the purpose of emphasizing the defamatory sense in which the language was used by the defendant. We omit them from our discussion for the reason that they will play no part in the consideration of the problem presented to us.

The complaint must fail because the publication does not defame any ascertainable person. It appears from the exhibits attached to the complaint that the Workers' Alliance consists of 162 locals, besides county organizations. It must have at least 162 officials besides state officials and its board. Said exhibit declares that the activities must be performed by members and officers who serve in their spare time without compensation. In view of the fact that many of the officers serve without compensation, it is a reasonable inference that many of the offices of the Alliance are each held by a number of officials in the course of a year. This would enlarge the number of "officials of the Alliance". To say that "their officials divert membership dues" is an attack upon a large group of persons. An accusation such as that complained of cannot have the quality of a libel unless there be a certainty as to the individuals accused. There is nothing in the published article that makes a personal application to the plaintiff. He cannot by use of the colloquium make the language which is applicable to so large a group of persons be made specifically to refer to him. The reference to "their officials" who are accused of diverting membership dues to further communistic agitation applies no more to plaintiff than would a similar statement, accusing federal judges of encouraging violations of the import tax laws be made to apply one judge. It is no nearer a libel against plaint would libel the defendant by publishing a declarati metropolitan press of California is devoted to the

of public life, lowering moral standards and debauching public officials. Certainly such general language against a class or group of people cannot constitute libel. Where a group is very large and nothing that is said applies in particular to the plaintiff, he cannot recover. (17 R. C. L. 375; *Louisville Times* v. *Stivers*, 252 Ky. 843 [68 S. W. (2d) 411, 97 A. L. R. 277]; 35 Cor. Jur. 1161.)

In the case of *Lynch* v. *Kirby*, 74 Misc. 266 [131 N. Y. Supp. 680], the plaintiff as president of the International Typographical Union of North America sued the National Association of Manufacturers for libel when it caused the publication of its resolution accusing said union of "long continued, cowardly and recklessly illegal determination to destroy the business of the Los Angeles Times . . . and recognizes this act of destruction of life and property as in line with the general policy of criminal unionism", etc. It was held that there was nothing in the publication that would warrant the court in finding that plaintiff was the individual referred to in the resolution; that the mere allegation that the libel had reference to the plaintiff was not sufficient unless some fact were alleged to show that the article was intended to refer to the plaintiff; that, although the article "referred to the Union of which the plaintiff was an officer, and the mere fact that he was such officer could not be construed to mean that he fostered such organization for the purpose of committing the crime referred to in the resolution".

A political sermon charged that the actual sovereigns of the city were 73 saloon keepers and wholesale dealers and that "officials under its benumbing influence violated their oaths of office". Although the district attorney was the official properly chargeable with the enforcement of the law, the Supreme Court of Wisconsin held that "it does not refer to the district attorney nor to the plaintiff but to all officials who come under the benumbing influence of this deadly exhalation and under such influence violated their oaths of office. . . . If the words used really contain no reflection on any particular individual, no averment or innuendo can make them defamatory. . . . There is nothing to show that it points to the district attorney more than it does to any other officer, unless it be the innuendo which is not warranted by the context." (*Arnold* v. *Ingram*, 151 Wis. 438 [138 N. W. 111, Ann. Cas. 1914C, 976].)

In a published article containing the headline "Parki. ; Lot Racket Probe Ordered Here", it was charged that the parking lot owners in the city of Washington made a practice of moving cars from parking lots on to the streets in order to make room for parking more cars. Although the plaintiff showed that, in the downtown section of Washington, there were 20 or more lots operated by 10 or 12 owners and though he was the operator of 9 of the lots, it was held that no libel was alleged. "The article could not reasonably be said to concern more than the owners of downtown parking lots . . as a class" and therefore there was no libel. *On the one hand is the social interest in free press discussion of matters of general concern* and on the other is the individual interest in reputation. *The courts have chosen not to limit freedom of public discussion except to prevent harm occasioned by defamatory statements reasonably susceptible of special application to a given individual.*" (*Service Parking Corp.* v. *Washington Times,* 92 Fed. (2d) 505 [67 App. D. C. 351].)

Even where there is a small group involved and the language fails to indicate affirmatively that all members were involved in the charge, it was held that "defamatory words must refer to some ascertained or ascertainable person, and that that person must be the particular plaintiff". (*Helmicks* v. *Stevlingson,* 212 Wis. 614, 615 [250 N. W. 402, 91 A. L. R. 1158].)

"In every action for defamation, two things are necessary (1) A defamation apparent from the words themselves, for no innuendo can alter the sense. (2) Certainty as to the person who is defamed, for no innuendo can render certain that which is uncertain." (*Schoenfeld* v. *Journal Co.,* 204 Wis. 132, 136 [235 N. W. 442].)

The fact that a number of the cases have authorized recovery by a member of a small group where it was clear that the defamation applied to all the group does not detract from the doctrine above announced or from the force of the decisions above cited. If a published article of a defamatory nature were to charge that the entire board of supervisors of a particular community, consisting of five members, is corrupt and diverts the public funds to the maintenance of brothels, each member of that board could recover but if a similar article were to charge all of the supervisors of the state with corruption, it would not be libelous as against an individual supervisor because the group accused would be

too numerous. (*Weston* v. *Commercial Advertiser Assn.*, 184 N. Y. 479 [77 N. E. 660]; *Barron* v. *Smith*, 19 S. D. 50 [101 N. W. 1105].)

Charges of libel against a publication which has re-ported or commented upon matters involving public policy should be viewed with caution. It is in such matters that the freedom of the press is of paramount concern. Without such freedom, the march of progress might be stayed or the venom of alien cultures might stealthily undermine cherished land-marks. "It is far better for the public welfare that some occasional consequential injury to an individual, arising from general censure of his profession, his party, or his sect, should go without remedy, than that free discussion on the great questions of politics, or morals, or faith should be checked by the dread of embittered and boundless litigation." (*Ryck-man* v. *Delavan*, 25 Wend. (N. Y.) 186, 199.)

Plaintiff asserts that it is sufficient for him to allege that the published article referred to him and that it is a matter for investigation at the trial of the facts of the case to determine whether in fact his allegation be true. (Code Civ. Proc., sec. 460.) That section, in effect, declares that it is sufficient to state generally that the same was published or spoken concerning the plaintiff. But it appears to have been the intention of the legislature to establish a rule of pleading and not to assert a principle of substantive law. They could not have intended to declare what is not a libel is a libel by suggesting a form in which a pleader might frame his language to allege a libel.

The purpose of said section 460 is to allow the pleader to state his cause in general terms, not to enable him to reach the point of trial when he is unable to state a case. If the publi-cation does "not in fact charge plaintiff with the things set forth in the innuendo, and when fairly read it appears that the plaintiff is not so charged, its meaning cannot be ex-tended by innuendo to make it constitute a libel against him". (*Hays* v. *American Defense Soc.*, 252 N. Y. 266 [169 N. E. 380].)

In view of the foregoing, it will be unnecessary to consider defendant's second contention, to wit, that the matters alleged do not constitute a libel *per se*. Also, plaintiff's grievance that the trial court abused its discretion in not ordering fur-

ther privilege of amending the complaint is disposed of b[y] our holding that plaintiff cannot state a cause of action.

The judgment is affirmed.

McComb, J., concurred.