[Civ. No. 5916. Fourth Dist. Jan. 13, 1959.]

OREGON SMITH, Appellant, v. JERENE APPLEBY HARNISH et al., Respondents.

116

Jack B. Tenney for Appellant.

Wilson & Wilson for Respondents.

SHEPARD, J.—This is an action for libel. Plaintiff alleges that defendants falsely and maliciously published of and concerning plaintiff two newspaper articles for the purpose of exposing him to hatred, contempt and ridicule. The trial court sustained defendants' demurrer to the complaint without leave to amend and entered a judgment of dismissal. Plaintiff appeals.

The first article, insofar as is necessary to understand what is claimed by the plaintiff to be libelous, reads as follows:

"District Court Upholds
"Slander Suit Judgment.

"Ontario—The District Court of Appeal has upheld a lower court's judgment in The Daily Report's slander suit against Oregon Smith . . ."

"The suit grew out of remarks made by Smith in 1953, then an Ontario councilman, that The Daily Report was 'following a Communist Party line.'

"When the action came to the Superior Court on March 7, 1955, Smith's attorney . . . argued that 'the defamatory remarks . . . were made at a legislative proceeding and were therefore fully privileged.'

"Judge Raymond Thompson . . . concurred . . . and brought a judgment for nonsuit. This was the ruling which has been upheld by the District Court of Appeal. . . .

"The Daily Report had appealed in the belief that, if the decision were allowed to stand, 'the public would have no protection against malicious statements made by unscrupulous members of any minor legislative body.' "

The second article, insofar as is necessary to understand what is claimed to be libelous, reads as follows:

"UNBRIDLED LICENSE

"Does a member of a minor legislative body, such as a city council, have the right to say anything he wishes about anybody in an official proceeding, without regard to the laws of slander?

"He does indeed!

"The question was one which The Daily Report pursued through the courts of the State of California. The answer was the same from the Superior Court, the District Court of Appeal, the Supreme Court: A councilman is a 'legislator' under the law and as such has complete privilege to make any defamatory remarks.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"The newspaper sued. Smith pleaded immunity. He said he was a 'legislator' . . . The newspaper appealed the decision. It did so in the belief that a member of a minor legislative body, elected by the people and drawing public funds, should not have a privilege which the people do not have.

"Smith's silly statement that The Daily Report was a Communist Party line newspaper was never an issue with the

courts. It was conceded to be defamatory—even by the defense!

"In pleading for dismissal Jack Tenney, Smith's attorney, said that the 'complaint as it now appears on the face thereof does not state a cause of action; it shows that the defamatory remarks made by the defendant were made at a legislative proceeding. . . .'

"Tenney's characterizing the remarks as 'defamatory' is in the court record."

It appears from the complaint, and an amendment thereto, that for a number of years "The Daily Report" has been sharply critical of plaintiff, using at times somewhat vitriolic terminology. These matters are set up in the complaint for the apparent purpose of showing malice in fact by defendants toward plaintiff, and it is apparent that some of them might possibly have been the subject of actions for libel had plaintiff chosen to proceed thereon.

However, in the particular articles alleged in the case here at bar the trial court on demurrer concluded that the alleged defamatory language of the first publication was such that even by innuendo it could not be made to apply to plaintiff; that it clearly applied to an indeterminate group of fictitious persons who might at some unstated future time "unscrupulously" defame other persons in a legislative proceeding.

With this decision we are in agreement, and we believe the case cited by the trial court sufficiently covers the point. Appellant has cited a large number of other cases which he believes indicate a different conclusion. We have been at pains to read all of them and while there is some language which, taken out of context, might give some comfort to plaintiff's position, it is our view that each case when read as a whole is clearly distinguishable from the case at bar.

"An accusation such as that complained of cannot have the quality of a libel unless there be a certainty as to the individuals accused. There is nothing in the published article that makes a personal application to the plaintiff. He cannot by use of the colloquium make the language which is applicable to so large a group of persons be made specifically to refer to him." (*Noral* v. *Hearst Publications, Inc.,* 40 Cal. App.2d 348, 350 [1] [104 P.2d 860].)

"The office of an innuendo is to declare what the words meant to those to whom they were published. When the words themselves, under any circumstances, would convey to those who read or hear them a meaning within the statutory defi-

nitions, there is no occasion for the pleading of an innuendo. Conversely, if the words under no circumstances could convey a defamatory meaning, then no innuendo can make them defamatory.'' (*Washer* v. *Bank of America*, 21 Cal.2d 822, 828 [1] [136 P.2d 297, 155 A.L.R. 1338].)

The trial court likewise held that the article upon which the second count is based is clearly a presentation of a point of view upon an issue that had become one of some public interest; that the particular portions complained of are merely arguments and would be recognized by anyone as such; that under the circumstances here presented they are not such as would sustain a cause of action for libel. With this view we likewise agree.

"In determining whether or not it is libelous, the article must be read as a whole in order to understand its import and the effects which it was calculated to have upon the minds of those who read it.'' (*Howard* v. *Southern Cal. etc. Newspapers*, 95 Cal.App.2d 580, 584 [2] [213 P.2d 399].)

The defense of legislative privilege essentially says: conceding our statement to be defamatory, still we cannot be held liable because we are protected by the cloak of absolute privilege under Civil Code, section 47, paragraph 2. In speaking of the defense of privilege, the Supreme Court said: "This defense is essentially one of confession and avoidance . . .'' (*Stevens* v. *Snow*, 191 Cal. 58, 64 [4] [214 P. 968].)

We agree with plaintiff that it would have been error in this case to refuse to permit plaintiff to amend if the basis of the ruling were on the special demurrer. (*Guilliams* v. *Hollywood Hospital*, 18 Cal.2d 97, 104 [9] [114 P.2d 1].) However, plaintiff has nowhere suggested a desire or possibility of amendment except in respect to special damages and such an amendment would not affect the matters we have discussed.

The judgment of dismissal is affirmed.

Mussell, Acting P. J., concurred.

A petition for a rehearing was denied February 13, 1959, and appellant's petition for a hearing by the Supreme Court was denied March 11, 1959.