614 F.2d 1244
 EXPERIMENTAL ENGINEERING, INC., a California Corporation,
and Ellco Engineering, Inc., a California
Corporation, Plaintiffs-Appellants,
v.
UNITED TECHNOLOGIES CORPORATION, a Delaware Corporation,
Defendant-Appellee.
 No. 77-3624.
 United States Court of Appeals,
Ninth Circuit.
 March 10, 1980.
 
 Robert L. Thatcher, Woolsey, Angelo & Thatcher, Newport Beach, Cal., for plaintiffs-appellants.
 M. Kevin Ryan, Jones, Day, Reavis & Pogue, Los Angeles, Cal., for defendant-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before TRASK and KENNEDY, Circuit Judges, and ZIRPOLI,* District Judge.
 TRASK, Circuit Judge:
 
 
 1
 This appeal is taken from a dismissal under Fed.R.Civ.P. 12(b)(6) of plaintiff-appellant's contract and related claims for failure to state a claim upon which relief may be granted, or in the alternative for summary judgment. In considering a motion to dismiss under Rule 12(b)(6), the district court must take as true all facts as alleged by the plaintiff. Hospital Building Co. v. Trustees of Rex Hospital, 425 U.S. 738, 740, 96 S.Ct. 1848, 1850, 48 L.Ed.2d 338 (1976); De La Cruz v. Tormey, 582 F.2d 45, 48 (9th Cir. 1978), cert. denied, 441 U.S. 965, 99 S.Ct. 2416, 60 L.Ed.2d 1072 (1979). We make the same assumptions in deciding this appeal.
 
 
 2
 * The facts as alleged by appellant Experimental Engineering (EEI), establish that on March 25, 1975, the United States Air Force issued an announcement requesting bids for an Air Force defense project called the Installed Turbine Engine Survivability Criteria (ITESC). Pursuant to this announcement, EEI (then known as Ellco Engineering), sent letters to aerospace firms that would bid on the prime contract informing them of its capabilities as a subcontractor on the project. The letters suggested that EEI enter into a team arrangement with the prime contractor. In a team arrangement, often used in national defense projects, a number of companies join forces and contribute their own particular expertise to be able to do the work on an entire project.
 
 
 3
 EEI's contacts with respondent United Technologies (United), began in June 1975, when EEI sent its interest letter to the Pratt & Whitney Aircraft Division of United. Thereafter, United asked EEI to submit a proposal of work that EEI was to do on the project. On October 28, 1975, after the Air Force asked United to submit a bid, United formally requested a proposal from EEI. The request stated that all technical information must be in a form suitable for integration into the United proposal to the Air Force. On November 7, 1975, EEI sent its proposal to United. United thereafter submitted its proposal to the Air Force and characterized EEI as a team member. On April 30, 1976, United sent a letter to EEI informing them that the proposal had been submitted and stating that "(u)pon receipt of this prime contract, Pratt & Whitney Aircraft intends to negotiate your proposal and issue a subcontract for the work to be performed by your company under this program."
 
 
 4
 On June 10, 1976, after United's bid was accepted by the Air Force, United sent an authorization by mailgram to EEI authorizing EEI to begin work on the project. The relevant portions of that wire are as follows: (1) the Authorization reaffirmed United's intention to issue a subcontract to EEI by stating "(t)he definitized cost-plus-fixed-fee subcontract which will supercede this authorization will be negotiated to include terms and conditions consistent with the prime contract;" (2) the Authorization allowed expenditures of up to $20,000 to begin work on the project; (3) the Authorization contained a termination clause which incorporated by a reference a standard "termination for convenience" clause which allows termination "whenever for any reason the Buyer shall determine that such termination is in the best interest of the Buyer;" and (4) the Authorization asked for acknowledgement and acceptance by return telegram.
 
 
 5
 The proposed Authorization referred to a "termination clause" which was apparently unclear to EEI. Its president therefore requested clarification. On June 14, 1976, the president of EEI talked to Mr. Gaines, counsel for United, and requested an explanation of that phrase together with several other phrases and provisions. Mr. Gaines explained that the termination clause was included only to protect United in case the Air Force were to terminate the prime contract and that United would use the clause only if the Air Force did so first.[1] That explanation appears to have been satisfactory. On June 17, 1976, EEI formally acknowledged by wire the United mailgram. On August 24, 1976, United, in a letter, authorized additional expenditures of $7,950 and stated that a "formal subcontract . . . shall follow."
 
 
 6
 Three days later, however, United notified EEI by telephone that the Authorization was being "terminated for convenience." On September 27, 1976, United formally notified EEI by letter of the termination, denied any further obligations to EEI, and subsequently awarded the subcontract to another company. EEI alleges that it had incurred expenses of over $40,000 in assisting United to prepare the ITESC proposal.
 
 
 7
 On October 19, 1976, EEI filed suit against United in California state court. United removed the case to federal district court on diversity grounds and then moved to dismiss EEI's complaint under Fed.R.Civ.P. 12(b)(6). After a series of complaints were dismissed with leave to amend, EEI's third amended complaint was dismissed with prejudice. EEI appeals from this dismissal. This court has jurisdiction of the appeal under 28 U.S.C. § 1291.
 
 II
 
 8
 The plaintiff's claims should not be dismissed on the pleadings "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); Amfac Mortgage Corp. v. Arizona Mall of Tempe, Inc., 583 F.2d 426, 429 (9th Cir. 1978). Applying the facts as alleged to this standard, dismissal for failure to state a claim was improper.
 
 
 9
 The district court dismissed the action on the grounds that the only agreement between the parties was the Authorization and that the Authorization was properly terminated under the termination for convenience clause. Suffice it to say that EEI adequately alleged facts, which, if proved, would demonstrate that the parties had agreed that United would deliver a subcontract to EEI in return for EEI's preparation of technical data included in United's proposal.[2] In addition, EEI alleges that the Authorization was not treated by United as that subcontract and it could not have been the subcontract. Further, EEI alleged facts which could establish that the termination for convenience clause could only properly be utilized if the Air Force first terminated United's prime contract. At the very least, therefore, EEI alleged facts upon which relief could be granted.
 
 III
 
 10
 Even if a district court incorrectly holds that a plaintiff's pleadings do not state a claim upon which relief may be granted, we may uphold dismissal of the suit under Fed.R.Civ.P. 12 if the district court's ruling can properly be treated as a summary judgment for the defendant. Black v. Payne, 591 F.2d 83, 89 (9th Cir. 1979); Amfac Mortgage Corp. v. Arizona Mall of Tempe, Inc., 583 F.2d 426, 430 (9th Cir. 1978). Summary judgment for United, however, would be appropriate only if the affidavits submitted and the undisputed material facts demonstrate that United was entitled to prevail as a matter of law. See Fed.R.Civ.P. 56; Preaseau v. Prudential Insurance Co., 591 F.2d 74, 80 (9th Cir. 1979).
 
 
 11
 As previously discussed, the material facts of this case are in dispute. Those facts include whether the Authorization was the sole agreement between the parties and if so, whether it was properly terminated. The only affidavits submitted on the merits were submitted by the plaintiff and include the affidavit of EEI's president which describes his conversation with United's legal counsel during which United's counsel explained that the termination for convenience clause would only be used to protect United against a cancellation of its prime contract by the Air Force.[3] Summary judgment is therefore inappropriate.
 
 IV
 
 12
 The facts alleged by the plaintiff establish a cause of action upon which relief could be granted. See generally Air Technology Corp. v. General Electric Co., 347 Mass. 613, 199 N.E.2d 538, 546-48 (1964). Summary judgment would also be improper because there is dispute as to material facts. The judgment of the district court is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable Alfonso J. Zirpoli, United States Senior District Judge, for the Northern District of California, sitting by designation
 
 
 [1]
 Parol evidence is, of course, admissible to explain the meaning of contract terms. The Gaines conversation is evidence of the parties' intent in including the "termination for convenience" clause in their contract. See Masterson v. Sine, 68 Cal.2d 222, 65 Cal.Rptr. 545, 346 P.2d 561, 562-63 (1968)
 
 
 [2]
 The parties' conduct may be examined to ascertain whether they intended to enter into a contract other than the Authorization. See California Pacific Bank v. Small Business Administration, 557 F.2d 218, 222 (9th Cir. 1977). The parties' conduct as alleged by EEI, especially the description of EEI as a member of a "team" in United's formal proposal to the Air Force, also indicates that both EEI and United intended that United would deliver a full subcontract to EEI. See Air Technology Corp. v. General Electric Co., 347 Mass. 613, 199 N.E.2d 538, 546-47 (1964)
 
 
 [3]
 The explanation of the meaning of the "termination for convenience" clause by defendant's counsel as alleged by EEI and not denied was that
 "(7) Any specific subcontract between plaintiffs and UNITED would terminate if and only if the United States were to terminate its prime contract with UNITED." C.T. at 317.
 Such an eventuality did not occur or was not alleged to have occurred. Indeed, the record discloses that the subcontract was thereafter entered into by United and another company.