be awarded attorneys' fees; the parties shall bear their own costs.

The judgment of the district court is AFFIRMED IN PART and REVERSED IN PART.

**CHURCH OF SCIENTOLOGY OF CALIFORNIA, Plaintiff-Appellant,**

v.

**Michael J. FLYNN, Defendant-Appellee.**

**No. 83–6494.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 7, 1984.

Decided Oct. 3, 1984.

Jonathan Lubell, New York City, c/o Taylor, Roth & Hunt, Los Angeles, Cal.

Stephen M. Lang, Lewis, D'Amato, Brisbois & Bisgaard, Los Angeles, Cal., for defendant-appellee.

Before TUTTLE,* Senior Circuit Judge, NORRIS, and BEEZER, Circuit Judges.

BEEZER, Circuit Judge:

This is an action for defamation brought by the Church of Scientology of California ("CSC") against Michael J. Flynn. The district court dismissed the suit with prejudice for failure to state a claim upon which relief can be granted. We reverse.

## I

### FACTS AND PROCEEDINGS BELOW

Flynn is a Massachusetts attorney who frequently represents former Scientologists against CSC. On June 25, 1983, Flynn allegedly made the following remarks to an audience of eighty persons in Los Angeles:

> Among the things that occurred to me in the four years that I have been litigating with an enormous organization that has a few people that control huge amounts of money, to hire armies of lawyers to try to destroy me and my clients and whether you know it or not yet, people like yourself, is what the whole war and game and battle is about.

---
* Hon. Elbert Parr Tuttle, Senior Judge, United States Court of Appeals for the Eleventh Circuit, sitting by designation.

In October 1979, shortly after I rejected an offer from the Church of Scientology that is to say whoever that is to get a refund for a client which I'm going to explain to you a little bit about, I was flying up to South Bend, Indiana and my airplane engine quit after an hour and a half in the flight, and for those of you who are pilots, you know that any degree of condensation you pick up on a pre flight examination from your fuel tanks. Well I was an hour and a half into the flight and we lost power entirely and we made an emergency landing and my eleven year old son was in the plane, another lawyer and a college classmate of mine, a Vietnam Veteran, and we drained off quarts of water from my fuel tanks. And as I indicated, it was shortly after I rejected an offer that I'm going to talk to you people about.

.    .    .    .    .

> And that's when their lawyer showed up and offered me a check for her money plus a little bit. And I told the lawyer what he could do with his check and that took place shortly before the plane incident. Now for a number of years, I dismissed the plane incident as being simply too preposterous to believe that this organization could do it.

CSC brought this action in federal district court, claiming over $10,000 in damages. Flynn filed a motion to dismiss under Fed.R.Civ.P. 12(b)(6). The district court granted the motion with prejudice.

## II

### DISCUSSION

#### A. *The Standard of Review*

A dismissal under Fed.R.Civ.P. 12(b)(6) is "freely reviewable as a question of law." *Compton v. Ide*, 732 F.2d 1429, 1429 (9th Cir.1984).[1] The conditions that must be

---
1. Flynn argues that the court should accord great deference to the district court's opinion because it is an interpretation of the law of the state in which the district court sits. This cir-

met before a motion may be granted under Fed.R.Civ.P. 12(b)(6) are quite strict. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see Rae v. Union Bank,* 725 F.2d 478, 479 (9th Cir.1984). In applying this standard, we must treat all of the plaintiff's allegations as true. *See Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 740, 96 S.Ct. 1848, 1850, 48 L.Ed.2d 338 (1976); *Experimental Engineering, Inc. v. United Technologies Corp.,* 614 F.2d 1244, 1245 (9th Cir.1980).

We emphasize the procedural setting of this case. We are called upon to decide whether CSC's complaint was sufficient to survive a motion to dismiss, not whether Flynn is liable to CSC for defamation.

### B. *The Existence of Defamatory Meaning*

■ Flynn contends that the district court's decision should be upheld because his statements lacked defamatory meaning. The existence of a defamatory meaning is generally a question of fact for the jury. *See Maidman v. Jewish Publications, Inc.,* 54 Cal.2d 643, 355 P.2d 265, 269, 7 Cal. Rptr. 617, 621 (1960); *Gallagher v. Chavalas,* 48 Cal.App.2d 52, 58, 119 P.2d 408 (1941). This case, however, involves a dismissal on the pleadings. The California Supreme Court recently stated the standard for reviewing a dismissal as follows: [2]

In determining the propriety of the trial court's [dismissal], this court's inquiry is not to determine if the communications may have an innocent meaning but rather to determine if the communication reasonably carries with it a defamatory meaning.... Just as the court must refrain from a "hair-splitting analysis" of what is said in an article to find an innocent meaning, so must it refrain from scrutinizing what is not said to find "a defamatory meaning which the article does not convey to a lay reader."

*Forsher v. Bugliosi,* 26 Cal.3d 792, 803, 608 P.2d 716, 722, 163 Cal.Rptr. 628, 634 (1980) (quoting *Mullins v. Thierot,* 19 Cal.App.3d 302, 304, 97 Cal.Rptr. 27, 28 (1971)). Thus, the district court's decision cannot be upheld on this ground if "by reasonable implication a defamatory meaning may be found in the communication." *Id.* 26 Cal.3d at 806, 608 P.2d at 723, 163 Cal.Rptr. at 635.

■ Although Flynn did not specifically accuse CSC of attempting to cause his death, it would be reasonable to imply a defamatory meaning from his remarks. It is well settled that the "arrangement and phrasing of apparently nonlibelous statements" cannot hide the existence of a defamatory meaning. *Kapellas v. Kofman,* 1 Cal.3d 20, 33, 459 P.2d 912, 919–20, 81 Cal.Rptr. 360, 367–68 (1969). Indeed, the meaning of a statement is often dependent upon its context. *See Mullins v. Brando,* 13 Cal.App.3d 409, 414–15, 91 Cal.Rptr. 796, 798–99 (1970), *cert. denied,* 403 U.S. 923 (1971). It would be entirely reasonable for a jury to conclude that Flynn was accusing CSC of attempting to cause his death, rather than merely describing something that had happened to him. *See id.; see also Okun v. Superior Court,* 29 Cal.3d 442, 450, 629 P.2d 1369, 1373, 175 Cal.Rptr. 157, 161 ("[A] writing's susceptibility to innocent meaning does not in itself preclude a finding that an ordinary reader would understand it in a libelous sense."), *cert. denied,* 454 U.S. 1099, 102 S.Ct. 673, 70 L.Ed.2d 641 (1981). We conclude that

---

cuit, however, has abandoned the deferential standard. *In re Complaint of McLinn,* 739 F.2d 1395 at 1397 (9th Cir.1984) (en banc) ("Today we adopt as the law of the circuit the rule that questions of state law are reviewable under the same independent de novo standard as are questions of federal law.").

**2.** Federal law, rather than state law, sets the standard for dismissal under Fed.R.Civ.P. 12(b)(6). See 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1357, at 174 (Supp. 1984). Since the issue before us is whether the complaint states a cause of action under California law, however, the standard for dismissal in state court is highly relevant.

CSC's complaint sufficiently alleges the existence of a defamatory meaning.[3]

## C. *Identification of the Plaintiff*

Flynn contends that his statements were not defamatory because they did not adequately identify CSC. Flynn argues that the statements referred to Scientology as a whole and are therefore subject to the group libel rule.[4] The group libel rule generally bars defamation actions to which it applies. *See Barger v. Playboy Enterprises, Inc.*, 564 F.Supp. 1151, 1153 (N.D.Cal. 1983) (applying California law); *Restatement (Second) of Torts* § 564A(a) (1977). Because "Scientology" refers to over 300 churches, Flynn argues that CSC lacks standing to sue for defamation.

■ We find, however, that the group libel rule does not apply in this case. The group libel rule applies when a group member brings a defamation suit based on statements made regarding the group. In contrast, CSC has alleged that Flynn's remarks were reasonably understood to refer specifically to CSC, rather than to Scientology as a whole. Flynn's remarks support this theory. Flynn referred to "an enormous organization," "the Church of Scientology," and "this organization." A jury could reasonably find that Flynn was referring to a specific actor, rather than to Scientology as a whole. If that is the case, the group libel rule would not preclude a

finding that Flynn's statements were "of and concerning" CSC.[5]

■ But even though the group libel rule does not apply, CSC still must establish that the remarks were "of and concerning" CSC. Under California law, "[t]here is no requirement that the person defamed be mentioned by name.... It is sufficient if from the evidence the jury can infer that the defamatory statement applies to the plaintiff ... [or] if the publication points to the plaintiff by description or circumstance tending to identify him." *DiGiorgio Fruit Corp. v. AFL–CIO*, 215 Cal.App.2d 560, 30 Cal.Rptr. 350, 355 (1963); *see also Bindrim v. Mitchell*, 92 Cal.App.3d 61, 75–76, 155 Cal.Rptr. 29, 37–38 (upholding a jury finding that the depiction of a fictitious character in a novel defamed the plaintiff even though the description of the character differed from the plaintiff in several respects), *cert. denied*, 444 U.S. 984, 100 S.Ct. 490, 62 L.Ed.2d 412 (1979).

CSC has pleaded several facts that would establish this element. First, CSC pleaded that Flynn's remarks were "understood by the listening public to be of and concerning Plaintiff." Second, Flynn allegedly referred to the organization "that I have been litigating with." By Flynn's admission, that was CSC. Third, CSC pleaded that Flynn's remarks were made in Los Angeles, which is CSC's principal place of business. Fourth, CSC pleaded that Flynn intended to refer to CSC.[6] Finally, CSC

---

3. Flynn asserts that the remarks contain cautionary words and qualifying phrases that negate any conceivable defamatory meaning. *See Forsher*, 26 Cal.3d at 804–05, 608 P.2d at 722–23, 163 Cal.Rptr. at 634–35. In fact, the remarks contain only one such statement: "Now for a number of years, I dismissed the plane incident as being simply too preposterous to believe that this organization could do it." That statement is hardly cautionary; it could be read to mean that Flynn no longer thought the accusation was "too preposterous to believe."

4. California recognizes the group libel rule. *See Smith v. Harnish*, 167 Cal.App.2d 115, 333 P.2d 815, 817 (1959); *Noral v. Hearst Publications, Inc.*, 40 Cal.App.2d 348, 104 P.2d 860, 862 (1940). *See generally* Comment, *Group Defamation and Individual Actions: A New Look at an Old Rule*, 71 Calif.L.Rev. 1532, 1533–36 (1983).

5. CSC's claim would also fall within a well-established exception to the group libel rule that allows a group member to sue upon a showing that "the circumstances of a publication reasonably give rise to the conclusion that there is particular reference to the member." *Restatement (Second) of Torts* § 564A(b) (1977). This approach is not analytically different from our conclusion that the group libel rule does not apply. *See* Comment, *supra*, at 1536 (noting that this principle is not really an exception to the group libel rule, but rather "is merely a recognition that one who is individually defamed can sue even if the defamation is disguised as a group slur").

6. CSC claims that it can prove this by producing affidavits by Flynn from unrelated litigation. If CSC proves that Flynn intended to refer to CSC and that his audience actually understood him

pleaded that the members of the audience requested over $10,000 in refunds and re-payments from CSC. We conclude that CSC's pleadings are sufficient to survive a motion to dismiss on this element.

### D. *Statement of Opinion*

■ Because of first amendment concerns, *see Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339, 94 S.Ct. 2997, 3006, 41 L.Ed.2d 789 (1974), defamation actions may not be based on statements of opinion. *Lewis v. Time Inc.*, 710 F.2d 549, 553 (9th Cir.1983); *Underwood v. CBS, Inc.*, 150 Cal.App.3d 460, 198 Cal.Rptr. 48, 51 (1984). Flynn contends that his remarks constitute opinion as a matter of law. *See Lewis*, 710 F.2d at 553; *cf. Good Government Group, Inc. v. Superior Court*, 22 Cal.3d 672, 682, 586 P.2d 572, 576, 150 Cal.Rptr. 258, 262 (1978) (holding that the opinion issue raises a jury question under certain circumstances), *cert. denied*, 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979).

■ It is not always easy to distinguish between fact and opinion.[7] In deciding whether a particular statement is an opinion,

> it is important to keep three factors in mind. First, it is established that words are not defamatory unless they are understood in a defamatory sense.... A second factor ... is that even apparent statements of fact may assume the character of statements of opinion, and thus be privileged, when made in public debate, heated labor dispute, or other circumstances.... The final consideration in the fact/opinion analysis is the language of the allegedly defamatory statement.

*Information Control Corp. v. Genesis One Computer Corp.*, 611 F.2d 781, 783–84 (9th Cir.1980) (applying California law). With regard to the first factor, CSC has pleaded that the remarks were understood

in a defamatory sense. With regard to the second factor, the circumstances surrounding the statement are not revealed by the record. Thus, the first two factors do not support Flynn's position.

■ Flynn focuses on the third factor, arguing that the language of his remarks expresses an opinion. If Flynn's remarks had been " 'cautiously phrased in terms of apparency,' " this factor would favor finding an opinion. *Information Control*, 611 F.2d at 784 (quoting *Gregory v. McDonnell Douglas Corp.*, 17 Cal.3d 596, 603, 552 P.2d 425, 429, 131 Cal.Rptr. 641, 645 (1976)). Despite Flynn's assertions, however, his remarks were not phrased as opinions. If CSC's allegations are correct, Flynn directly accused CSC of attempting to kill him. This was neither a "broad, unfocused, wholly subjective comment," *Lewis*, 710 F.2d at 554, nor a statement accompanied by express statements of opinion, *see Information Control*, 611 F.2d at 784, but rather was a statement of facts that could reasonably be construed as charging CSC with attempted murder, *see Fisher v. Larsen*, 138 Cal.App.3d 627, 638, 188 Cal.Rptr. 216, 224–25 (1982). We conclude that the district court's decision cannot be upheld on this ground.

### III

### CONCLUSION

Flynn has failed to establish that CSC's complaint is insufficient as a matter of law. Accordingly, the decision of the district court is REVERSED and REMANDED.

---

to refer to CSC, no further proof is required to establish this element. *Restatement (Second) of Torts* § 564 comment a (1977).

7. *See generally* Note, *Fact and Opinion After Gertz v. Robert Welch, Inc.: The Evolution of a Privilege*, 34 Rutgers L.Rev. 81 (1981) (discussing the alternative methods of distinguishing facts from opinions after *Gertz* ).