## Louisville Times v. Stivers.

(Decided Feb. 2, 1934.)

H. H. OWENS, CARY TABB, MURRAY L. BROWN, and PETER, LEE, TABB, KREIGER & HEYBURN for appellant.

ROY W. HOUSE, A. D. HALL and CHARLES N. HOBSON for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

The Louisville Times Company seeks to reverse a $10,000 judgment for libel recovered against it by F. P. Stivers.

A succession of tragic events took place in Manchester, Clay County, Ky., in 1932. On January 16th the Baker wholesale grocery store, owned by John L. Baker et al., was burned, and by the light of its burning A. G. Neal was assassinated. Judge C. P. Stivers (a brother of appellee) had some time before this presided at a trial of Tom Baker, Lloyd Baker et al., and he had been called as a witness to appear before the grand jury on April 18, 1932, and it was supposed his evidence, if then given, would in some way connect Tom Baker et al. with the assassination of Neal.

On April 16th Judge C. P. Stivers was assassinated by men who drove through the town in an automobile with the windows painted. John L. Baker was wanted for alleged complicity in the slaying of Judge Stivers. He had gone to Ohio, and on July 15, 1932, a hearing was had in Columbus relative to his extradition. On July 21st the Governor of Ohio gave his consent to this extradition. An account of the matter was sent out by the Associated Press, a portion of which was published in the Louisville Times. We give here the article pub-

lished, and in it we have italicized certain words by which F. P. Stivers alleges he was defamed and upon which he sued with the result stated:

"Baker Ordered Back to State. Must Face Charge of Accessory in Slaying of Manchester Judge. Columbus, Ohio, July 21 (AP)—*A Kentucky feud that started in Clay county more than half a century ago may be settled in the courts of that county.*

"Gov. George White of Ohio today approved the removal of John L. Baker, held at Cincinnati, to Manchester, Ky., to face a charge of being an accessory before the fact in the slaying of Police Judge C. P. Stivers.

"*Baker,* witnesses at an extradition hearing here last week testified, *is one of the last members of the family that has fought fist fights and gun battles with the Stivers clan for fifty years.*"

Plaintiff's conception of the intended meaning and effect of the published article is thus set out in the brief filed for him:

"No other meaning can be given to the words used, except that the published article in the Louisville Times charges that Frank Stivers: and also charges that Judge Stivers, and the whole Stivers generation had, for fifty years, been fighting the Bakers with firearms and fists; and further that, as a result of their attacks, there was only a single Baker left, the fugitive, John L. Baker. Is it not clear then that this amounts to a public printed charge of a number of actual crimes? We submit that the words of that libel, which is admitted, charge the plaintiff with:

"a. Assault and Battery—for what else can fist-fights be?

"b. Assault with a deadly weapon, firearms—for how else may a gun-battle be held?

"c. Attempt to do murder, added to conspiracy to murder since gun-battles by a family against a family amount to local war, or, as is alleged, 'vindictive strife and guerilla warfare.'

"d. Murder—how else can the Baker family have become reduced to a sole survivor?"

Plaintiff in his petition, after setting out the italicized words in the published article, added:

"Thereby falsely and maliciously imputing to the Stivers family, as above indicated, including this plaintiff, the crime of engaging in vindictive strike and guerilla warfare for the last fifty years, no part of which is true, but is wholly untrue."

To succeed, the plaintiff must show first that he was defamed by the publication of this article. He was asked if there then was a Stivers clan to which he belonged, and he answered: "Well, I am a Stivers and have always been." He was asked what "clan" meant, and his answer was: "A tribe or association of families, under one chieftain of a common ancestry and of the same surname." However, conceding but not deciding that plaintiff is correct in his position, and that the word "clan" as here used means family, can the plaintiff show he was defamed by the mere fact that his name is "Stivers."

In the recent case of Louisville Times Co. v. Emrich, 252 Ky. 210, 66 S. W. (2d) 73, 75, we said:

"One can defame a class. * * * To defame a class, the libelous article must be applicable to every member of the class."

It would perhaps have been better if we had used the word "group" instead of the word "class," for the reason given in 36 C. J. p. 1158, sec. 24. The substance of that section is, the plaintiff must be able to show he is the one against whom the article is directed, that he is the one defamed. In a comparatively small group that presents no great difficulty, as, for example, in the case of the family mentioned in the article involved in Fenstermaker v. Tribune Publishing Co., 12 Utah, 439, 43 P. 112, 13 Utah, 532, 45 P. 1097, 35 L. R. A. 611, where the evidence narrowed the application to one man, his wife, and their children.

As the size of the group increases, it becomes more and more difficult for the plaintiff to show he was the one at whom the article was directed, and presently it becomes impossible. As a result of that, there are men who make their living by circulating falsehoods against the Jews, the Mormons, the Catholics, the Masons, etc., taking care to mention no names, and to make only

general charges against all, and thus are able to ply their nefarious trade in safety because the group is so large that no particular individual can show the article is directed at him.

The rule is thus stated in 35 C. J. p. 1161, sec. 26:

"Where a publication affects a class of persons without any special personal application, no individual of that class can sustain an action for the publication, and it has been held that, where defamatory statements are made against an aggregate body of persons, an individual member not specially imputed or designated cannot maintain an action."

In 17 R. C. L. p. 375, sec. 127, it is stated this way:

"It seems that where the class or group in question is a very large one and there is little or nothing said or written which applies to the particular person who brings his action, the right of recovery will be denied."

About the only case we have found seemingly in conflict with the above rules is Ortenberg v. Plamondon, 35 Can. Law Times, 262, Ann. Cas. 1915C, page 347, wherein it was held that the plaintiff, who was a Jew, resident of the city of Quebec, was defamed by a lecture attacking the Jews in Quebec, in which city there lived about 75 Jewish families, but the law of Quebec in civil matters is derived from and based on the law of France and not the English common law. For that reason this Ortenberg Case is not of any persuasive effect.

A leading case supporting the above rules is Watson v. Detroit Journal Co., 143 Mich. 436, 107 N. W. 81, 83, 5 L. R. A. (N. S.) 480, 8 Ann. Cas. 131. That was an action by Watson et al., partners, engaged in manufacturing and selling trading stamps, to recover for damages alleged to have been sustained by them, from the publication by the defendant of an article referring to that business as "The Trading Stamp Fake," etc. It was held they could not maintain their action. In that opinion the court approved this rule:

"The rule which determines whether or not an action will lie where a class of people is libeled is: 'Do the defamatory words refer to some ascertained or ascertainable person?' "

A valuable note follows this case in 8 Ann. Cas. 135.

There are exceptions to these rules, and these exceptions are thus stated in 17 R. C. L. p. 376, sec. 127:

> "On the other hand, if the language employed is directed toward a comparatively small group of persons, or a restricted or local portion of a general class, and is so framed as to make defamatory imputations against all members of the small or restricted group it seems that any member thereof may sue."

We shall give a few such cases: Forbes v. Johnson, 50 Ky. (11 B. Mon.) 48 (number in class, 2); Smallwood v. York, 163 Ky. 139, 173 S. W. 380, L. R. A. 1915D, 578 (number in class, 12); Byers v. Martin, 2 Colo. 615, 25 Am. Rep. 755 (number in class, 12); Ryer v. Firemen's Journal Co., 11 Daly (N. Y.) 251 (number in class, 3); Maybee v. Fisk, 42 Barb. (N. Y.) 326 (number in the class, 3); Foxcroft v. Lacy, Hob. 89 (number in the class, 17).

We do not mean by citing these cases that a wholesale defamer is entitled to greater favor in the law than the one who traduces the good name of his neighbor only, but what we are seeking to point out is that, as the number of the class affected increases, so also does the difficulty any one of the class would have in showing the defamatory article was directed at him.

We find analogous rules regarding other questions. In the case of a public nuisance, everyone is affected by it, but an individual cannot sue where the injury done him by the nuisance differs in no respect from that suffered by the public generally. See Louisville Athletic Club v. Nolan, 134 Ky. 220, 119 S. W. 800. 23 L. R. A. (N. S.) 1019.

All taxpayers are affected by the ineligibility of public officers, yet a taxpayer cannot sue to enjoin payment of salary to an officer on ground the officer is ineligible. See Spurlock v. Lafferty, 214 Ky. 333, 283 S. W. 124. Any obstruction of a street in a city interferes to some extent with the rights of any resident of that city, yet, unless a resident can show some damage or inconvenience to himself greater than and different from that suffered by the public generally, he cannot maintain an action for its removal. See Hahn & Harris v. Figg, 5 Ky. Opin. 547; Moore & Mason v. Sparks, 8 Ky. Opin. 425.

According to the plaintiff, this was a defamation

of the whole Stivers generation. He does not even suggest how many that may be, but it will be presumed they are numerous.

This is strictly a suit by a member of a class presumptively large for a defamation of the class. The defendant's demurrer to the petition should have been sustained, and the same is true of its motion for a directed verdict in its favor.

For these errors, the judgment is reversed. Other questions are reserved.