**John A. O'BRIEN, et al., Plaintiffs,**

v.

**WILLIAMSON DAILY NEWS, et al., Defendants.**

**Gary Randall HUNT, Plaintiff,**

v.

**WILLIAMSON DAILY NEWS, et al., Defendants.**

**Civ.A. Nos. 88–385, 88–388 and 88–427.**

United States District Court,
E.D. Kentucky,
Pikeville Division.

March 16, 1990.

---

Francis D. Burke and Kathryn Burke, Pikeville, Ky., for plaintiffs.

Rudolph L. DiTrapano, Rebecca A. Baitty, DiTrapano & Jackson, Charleston, W.Va., for defendants Williamson Daily News and Cindy Walters.

Ernest M. Pitt, Jr., Holbrook, Vigor & Pitt, Ashland, Ky., for defendant The Daily Independent.

Jon L. Fleischaker, Kimberly K. Greene, Carole D. Christian, Wyatt, Tarrant & Combs, Louisville, Ky., for defendants Louisville–Times & Courier–Journal.

Henry E. Kinser, Kincaid, Wilson, Schaeffer, Hembree, VanInwegen & Kinser, P.S.C., Lexington, Ky., Rogers and Wells, New York City, for defendants Associated Press & Steve Robrahn.

Joe F. Childers, Shepherd & Childers, Lexington, Ky., Phillip J. Shepherd, Shepherd & Childers, Frankfort, Ky., for defendant Appalachian News Exp.

Robert F. Houlihan, Jr., Stoll, Keenon & Park, Lexington, Ky., for defendant Lexington Herald–Leader.

## OPINION AND ORDER

FORESTER, District Judge.

This matter is before the Court upon the filing of objections to the Magistrate's Report and Recommendation. The Magistrate, after consideration of various motions for summary judgment and for judgment on the pleadings, recommended dismissal of several defendants and claims in these matters. Various parties have now objected to all or part of his Report and Recommendation as to these motions. Responses have also been filed to the objections.

The plaintiffs have also recently filed a motion seeking to certify a question of state law to the Kentucky Supreme Court. The defendants have filed responses objecting to the motion.

The Court has made a *de novo* review of these matters and concludes as follows.

*Civil Action No. 88–385 and No. 88–388*

■ The Court has reviewed the memoranda of the parties and agrees with the conclusion of the Magistrate. Group libel actions require the libelous statements to be applicable to every member of the class, not merely to an aggregate body of persons. In the instant case, in addition to the large size of the group of teachers, the article refers to no identifiable group member and does not impugn the reputation of any specific member. The case law in this regard is clear.

Therefore, the Magistrate correctly recommended dismissal of all defendants and claims in Civil Action No. 88–385 and Civil Action No. 88–388 and dismissal of those actions. Furthermore, since there is case

law of the Kentucky appellate courts clearly suggesting this result, the plaintiffs' motion for certification of a question of law to the Kentucky Supreme Court is unnecessary.

*Civil Action No. 88–427*

■ The Magistrate recommended dismissal of all defendants except Williamson Daily News, Cindy Walters and the Associated Press, Inc. ["AP"]. The Magistrate recommended dismissal of the newspaper defendants because they simply relied on the wire service story in reprinting it. The Court agrees that the wire service defense applies in this instance. More importantly, the so-called "defense" is actually a definition of ordinary care in regard to the use of wire service stories.

■ On the other hand, the Magistrate recommended denial of the motion for summary judgment of defendants Williamson Daily News and Cindy Walters because Ms. Walters added additional information to the AP story that, at least, created a genuine issue of material fact regarding the false light claim and defamation of the individual plaintiff, Gary Randall Hunt. The Court agrees with the Magistrate's recommendation in this regard.

■ The Magistrate recommended denying the AP's motion for judgment on the pleadings.[1] The plaintiff only asserts a claim for defamation, and not a false light claim, against AP. The Magistrate recommended denial of AP's motion because recitation of the AP article arguably left the impression that plaintiff Hunt's altercation and the allegations of sexual misconduct were related, thereby suggesting defamation of Hunt individually as to claims of sexual misconduct.

He relied on the following passage of the AP news story for his recommendation as to this issue:

None of the speakers directly linked the request [for an investigation into "teachers having affairs with students"] with

---

1. The Magistrate referred to the AP's motion as one for summary judgment when the motion

was actually for judgment on the pleadings.

the clash between Francis and Hunt but most referred to "allegations" and "charges" surrounding the incident that could prove harmful to a teacher's career.

The Magistrate concluded that "[t]he qualifying part of the sentence, when combined with other references and the overall structure of the article, arguably leaves the impression that the fight and the sexual misconduct charges were somehow related."

The Court agrees with the Magistrate's conclusion. However, the Court would note that the possible implication of the article only sustains the sufficiency of the allegations in the plaintiff's complaint for purposes of ruling on the AP's motion for judgment on the pleadings.[2]

## CONCLUSION

In accordance with the foregoing, and the Court having made a *de novo* review of the pending motions, it is hereby ORDERED:

1) that the objections of the parties to the Magistrate's Report and Recommendation are DENIED;

2) that the motions for summary judgment in Civil Action No. 88–385 and Civil Action No. 88–388 are GRANTED as to all claims and defendants, and those actions are DISMISSED WITH PREJUDICE;

3) that the motions for summary judgment of Appalachian Newspapers, Inc., d/b/a Appalachian News–Express, The Courier–Journal and Louisville Times Company, Ottaway Newspapers, Inc., and the Lexington Herald–Leader in Civil Action No. 88–427 are GRANTED and those defendants are DISMISSED WITH PREJUDICE;

4) that the motions for summary judgment of Williamson Daily News and Cindy Walters in Civil Action No. 88–427 are DENIED;

5) that the motion for judgment on the pleadings of the Associated Press in Civil Action No. 88–427 is DENIED;

6) that the Magistrate's Report and Recommendation is ADOPTED as the opinion of the Court; and

7) that the plaintiff's motion to certify a question of law to the Kentucky Supreme Court is DENIED.

## MAGISTRATE'S REPORT AND RECOMMENDATION

JOSEPH M. HOOD, United States Magistrate.

The defendants in the above-styled diversity actions have individually filed motions for summary judgment against the claims of the various plaintiffs. The motions have been fully briefed and oral argument was held on January 24, 1990. [Record No. 63]. They have been referred to the undersigned for a report and recommendation. 28 U.S.C. § 636(b)(1)(B).

These actions involve newspaper accounts of a meeting of parents whose children attended Phelps High School in Pike County, Kentucky. Associated Press [AP] reporter Steve Robrahn attended the meeting and his account was distributed via the AP news service.[1] The AP story was published by defendants Williamson Daily News, Appalachian Newspapers, Louisville Courier–Journal/Louisville Times, Ottaway Newspapers, and Lexington Herald–Leader [the newspapers]. The newspapers printed the report essentially unchanged, except that the Williamson Daily News added information written by defendant Cindy Walters, a reporter for the newspaper.

The articles reported that the meeting was called by parents in response to the expulsion of a student, Billy Francis, for engaging in a fight with Phelps High School teacher Gary Randall Hunt [Hunt]. The news accounts primarily discussed this

---

**2.** This conclusion only affects the instant motion and does not address the merits of any other possible motion testing the sufficiency of the plaintiffs' claims, nor does this conclusion offer any bearing on the ultimate merits and resolution of the case.

**1.** Although Robrahn was originally a defendant, the AP stipulated that he was acting in his capacity as a reporter and Robrahn was dismissed from these actions.

subject. However, the reported information challenged in these actions involves an alleged discussion at the meeting in which parents sought an investigation of "teachers having affairs with students." The pertinent portions of the AP article read:

About 200 Phelps area residents have agreed to ask authorities to investigate possible sexual misconduct by Phelps High School teachers and to quickly appeal the permanent expulsion of an 18-year-old student after a fight with a teacher only a month before graduation.

. . . . .

[Holly] Pruett also said he had asked [Pike County School Superintendent Charles] Wright to investigate "teachers having affairs with students." None of the speakers directly linked the request with the clash between Francis and Hunt but most referred to "allegations" and "charges" surrounding the incident that could prove harmful to a teacher's career.

. . . . .

Bruce Hawkins, who served as an informal chairman at the meeting, and other speakers said they wanted answers to the teacher misconduct questions Pruett had raised.

. . . . .

Hawkins said none of his children are yet in high school. He urged parents to have open conversations with their children to determine if they were victims of abuse at school. He encouraged students in the audience to report any problems they may have had to the state Department of Social Services.

[Civil Action No. 88–385, Record No. 29 (Appendix)].

Hunt claims the articles falsely imply that he engaged in sexual misconduct with students, thereby defaming him and violating his right to privacy by casting him in a false light.[2] The plaintiffs in the other action are twenty-seven Phelps High School teachers who claim that the reference to "Phelps High School teachers" engaged in "sexual misconduct" was false and, as a result, they were each, as group members, defamed and their rights to privacy violated by having been placed in a false light.

Addressing first the group libel claims, the defendants argue that the group of all Phelps High School teachers is too numerous to succeed on such a claim. There were at least twenty-nine Phelps High School teachers at the time the articles were published.[3] Under Kentucky law, it is possible to defame a class if the libelous article is applicable to every member of the class. *Louisville Times v. Stivers*, 252 Ky. 843, 68 S.W.2d 411, 412 (1934). In *Stivers*, the court recognized the general rules in group libel applicable to this case:

Where a publication affects a class of persons without any special personal application, no individual of that class can sustain an action for the publication, and it has been held that, where defamatory statements are made against an aggregate body of persons, an individual member not specially imputed or designated cannot maintain an action.

. . . . .

On the other hand, if the language employed is directed toward a comparatively small group of persons, or a restricted or local portion of a general class, and is so framed as to make defamatory imputations against all members of the small or restricted group it seems that any member thereof may sue.

*Id.*

The *Stivers* court went on to cite several cases reflecting the small group exception, applying it to groups of two to seventeen persons. The defendants rely on this recitation of cases, and their own research, to assert that twenty-nine persons is simply too large a group to find that each person was defamed by the challenged publication.

---

**2.** Hunt's complaint also contained an assault and battery claim against Billy Francis. That claim has been remanded to state court, leaving no claim in this action against Francis.

**3.** The defendants' pleadings claim the total number of teachers to be between thirty and thirty-five. Twenty-nine teachers originally joined in bringing this action.

The plaintiffs have not cited any case law to the contrary and, in fact, the court's own research has failed to find any case, or similar facts to this case, in which standing was found for a group libel claim involving a class of over twenty-five persons.

There is no Kentucky case in which the small group exception was applied. An oft-cited case applying the principle is *Neiman–Marcus v. Lait*, 13 F.R.D. 311 (S.D.N.Y.1952). In *Lait*, the authors of a book accused Neiman–Marcus store saleswomen and models in Dallas, Texas of being prostitutes, and stated that, in the men's department, "[n]ow most of the sales staff are fairies, too." 13 F.R.D. at 313. The court found that the group of 382 saleswomen was too numerous, but the twenty-five salesmen in the men's department had standing for group libel. "An imputation of gross immorality to *some* of a small group casts suspicion upon all, where no attempt is made to exclude the innocent." *Lait*, 13 F.R.D. at 316 (citation omitted).

The plaintiffs here make the blanket assertion that the group of teachers is a defined local group and it is "comparatively small". In defining "comparatively small", it has been noted that, although "it is not possible to set definite limits as to the size of the group or class, ... the cases in which recovery has been allowed usually have involved numbers of 25 or fewer." Restatement (Second) of Torts § 564A comment b (1977).

The plaintiffs agree that "as the number of cases affected increases, so also does the difficulty any one of the class would have in showing the defamatory article was directed at him." *Stivers*, 68 S.W.2d at 412–

13. That is the problem the teachers face in this instance. No authority can be found, under this analysis,[4] which allows libel to be imputed to such a large group. The article clearly does not single out any one of the group as more prominent than the others in this regard.

A different result would arise if the accusation had involved, for example, "some English teachers at Phelps High School". In that situation, a small, defined portion of a larger group would be singled out for accusation. Under the cases cited by the parties, this example more appropriately represents the reasoning presented by the group libel theory. The group of all teachers is not so small that "the words may reasonably be understood to have personal reference and application to any member of it." Restatement (Second) of Torts § 564A comment b (1977).

The news accounts cannot be reasonably said to have impugned the integrity of every teacher at Phelps High School for the purposes of maintaining a group libel action. As both the libel claims and the false light privacy claims require the allegedly defamatory statements to be capable of reference to an individual, the defendants' summary judgment motions as to these plaintiffs should be granted on both claims and the complaint dismissed.[5]

The libel and false light privacy claims of Hunt are in a different posture in that he contends the sexual misconduct language in the news accounts can be understood to refer specifically to him. Further, the plaintiff infers a defamatory effect by the intertwining discussion of the fight and the sexual misconduct charges in the news ac-

---

4. Although a minority analysis, the "intensity of suspicion" test is gaining favor in some jurisdictions. These jurisdictions have abandoned the numerical approach in favor of a three-part factual inquiry into the definiteness and composition of the group, the prominence of the group, and the prominence of each individual plaintiff within the group. *See McCullough v. Cities Service Co.*, 676 P.2d 833 (Okla.1984) (discussing the analysis and its reasoning); *Brady v. Ottaway Newspapers, Inc.*, 84 A.D.2d 226, 445 N.Y.S.2d 786 (N.Y.App.Div.1981); *Fawcett Publications, Inc. v. Morris*, 377 P.2d 42 (Okla.1962). The plaintiffs have not argued the applicability of this test, nor is there any indication that the

Kentucky courts would adopt the analysis if presented with the opportunity.

5. Although the summary judgment motions do not address this issue, the plaintiffs in this diversity action have claimed that KRS 411.051 is violative of § 14 of the Kentucky Constitution. That statute limits the damages which may be awarded in libel actions against the news media. In light of the determination that the plaintiff teachers cannot make out a defamation claim, a state constitutional argument regarding damages need not be resolved.

counts. The defendants believe Hunt's interpretation to be strained and expressly negated within the article.

■ Reading the article as a whole, it cannot be said that the plaintiff's interpretation is unreasonable. The defendants rely on a statement in the article that none of the speakers had linked Hunt with the sexual misconduct charges. However, the entire sentence does not have the asserted effect:

> None of the speakers directly linked the request with the clash between Francis and Hunt *but most referred to "allegations" and "charges" surrounding the incident that could prove harmful to a teacher's career.*

[Civil Action No. 88–385, Record No. 29 (Appendix) (emphasis added) ].[6]

This emphasized wording actually *adds* to the potential defamatory character of the article. The qualifying part of the sentence, when combined with other references and the overall structure of the article, arguably leaves the impression that the fight and the sexual misconduct charges were somehow related. One such reference is a quoted remark by parent Holly Pruett, the person who asked for the investigation into teachers having affairs with students. Just prior to discussing this allegation, the AP story recites that Pruett said "his daughter was indirectly involved in the altercation."

The plaintiff's inference is further evidenced by the Williamson Daily News article. As earlier noted, Williamson Daily News reporter Cindy Walters added information to the AP news account. Immediately following the above-quoted paragraph on the lack of a link between the two topics, she wrote:

> [Phelps High School principal] O'Brien said last week that if "something was going on, I want to stop it".... O'Brien confirmed that he had received a complaint against Gary Hunt from a 17–year

old female who is a senior at the school, but that she was not accompanied by a parent.

[Civil Action No. 88–427, Record No. 1, Plaintiff's Exhibit 2]. O'Brien claims he never made the reported remarks. [Record No. 62]. Walters' information, of course, cannot be attributed to the AP story and the other newspapers, but it is noteworthy in respect to whether Hunt's claims raise a sufficient factual question to overcome summary judgment.

The wording of the news account "must be measured by the natural and probable effect on the mind of the average lay reader." *Digest Publishing Co. v. Perry Publishing Co.*, 284 S.W.2d 832, 834 (Ky.1955). It cannot clearly be said that the interpretation proposed by Hunt fails this standard. The cases to the contrary cited by the defendants simply do not involve fact patterns similar to that presented in this instance. The ultimate conclusion on the reasonableness of the allegedly libelous interpretation must lie with the finder of fact.

This question of fact also sustains the false light claim in that the fact finder must determine whether, assuming the implication was false, the publisher acted in reckless disregard to its falsity or the false light in which the construction of the article placed the plaintiff. *See McCall v. Courier–Journal & Louisville Times*, 623 S.W.2d 882, 888 (Ky.1981). The facts presented on the record, taken in the light most favorable to the plaintiff, do not preclude a finding of reckless disregard.

The defendants urge that the plaintiff's interpretation requires knowledge of extrinsic facts to show the circumstances under which the news account was written, thus requiring him to plead special damages. *See Digest Publishing*, 284 S.W.2d at 834. The plaintiff relies only on the language within the AP story. Under the foregoing analysis, the alleged inference from the "four corners" of the article is

---

**6.** The Louisville Courier–Journal excised the emphasized wording of this sentence. Without that language, the sentence does effectively negate any inference of a link between Hunt and the sexual misconduct allegations. The overall wording of the article does not overcome such an express disclaimer. Thus, assuming the wire service defense did not apply, the wording of the Courier–Journal's article precludes a defamation claim by Hunt against that defendant.

sufficient to argue that a reasonable reader would conclude that Hunt was involved in sexual misconduct charges.

■ Charges that a teacher is having an "affair" with a student clearly warrant the court's presumption that they tend to degrade or disgrace the plaintiff, or hold him up to public hatred, contempt or scorn. *See Digest Publishing*, 284 S.W.2d at 834. Therefore, the assertion of libel *per se* is appropriate and Hunt need not plead special damages.

The newspapers contend that, assuming the AP news service story was libelous, they cannot be held liable merely for reprinting a reliable news service account. The plaintiff argues that the newspapers cannot rely with impunity on the wire service, but instead are obligated to investigate accounts which are so outrageous as to put them on notice of potential defamation.

Kentucky has adopted a negligence standard in regard to defamation of private persons. *McCall*, 623 S.W.2d at 886. The plaintiff believes the newspapers were negligent in failing to investigate the AP story. In support of this assertion, Hunt cites only that the accusation in the article that teachers were engaging in sexual misconduct should have raised a red flag for the newspapers to investigate the allegation before publishing. Such investigations are, however, the purpose of relying on AP news accounts. The plaintiff does not take issue with the general reliability of the AP news service.

Allegations of wrongdoing are published nearly every day and involve people worldwide. The plaintiff has offered no authority which holds that the mention of sexual misconduct should automatically require an independent investigation by every newspaper which wishes to publish such a story as transmitted via the AP. The burden would clearly be onerous, as noted in a decision cited by the defendants:

> The usual meaning of the term "ordinary care" in the context of a local media organization's handling of a wire service

release would not require that organization to independently verify the accuracy of the wire release of a reputable news agency. Imposing such a requirement on a local media organization would be to impose a duty of extraordinary care, not ordinary care.

*Brown v. Courier Herald Publishing Co.*, 700 F.Supp. 534 (S.D.Ga.1988) [copy attached at Civil Action No. 88–385, No. 46].

The reasoning behind the wire service defense is clearly persuasive and has been recognized by other courts. *See Gay v. Williams*, 486 F.Supp. 12, 16 (D.Alaska 1979). Although the plaintiff points to criticism of the *Gay* decision, the wire service defense aspect was not so discussed or rejected. The "defense" is actually just a definition of ordinary care in regard to the use of wire service news stories. No notion of ordinary care, on the circumstances of this case, would require the newspapers to have independently investigated the story. All allegations were directly attributed to named individuals. There was nothing on the surface of the AP news account to indicate that it was anything other than an accurate account of a public meeting and remarks made therein.

Summary judgment is, thus, appropriate on Hunt's libel claims against all of the newspaper defendants, except the Williamson Daily News. As a result of the additional text by Cindy Walters specifically naming Hunt, which is now alleged to be false, she and the Williamson Daily News must remain to combat the plaintiff's defamation claim.

As to false light allegations, the plaintiff must show malice by the defendants.[7] *See Time, Inc. v. Hill*, 385 U.S. 374 (1967); *McCall*, 623 S.W.2d at 888. Hunt's inability to establish negligence by the newspapers in simply republishing the AP story necessarily precludes a finding of malice. Thus, his false light privacy claims also must be dismissed as to these newspapers, again excepting the Williamson Daily News and Cindy Walters. Consequently, the remaining matters to be resolved in this action would be Hunt's claims for defamation

---

**7.** The complaint does not seek relief from AP under false light privacy.

and false light against the Williamson Daily News and Cindy Walters, and his claim for defamation against the AP.

Williamson Daily News and Cindy Walters argue that the article is privileged by the fact that it is a fair and accurate report of a public proceeding. As with the wire service defense, summary judgment is inappropriate because of the added portion specifically naming Hunt as having been accused of sexual misconduct. The added information was not a result of the public meeting, nor was Cindy Walters at the public meeting. The assertion of privilege could not result in summary judgment, thus its applicability need not be determined at this juncture.

The AP has claimed privilege under the First Amendment to the United States Constitution for statements critical of a class of public employees, citing *New York Times v. Sullivan*, 376 U.S. 254, 292 (1964). However, Hunt claims that he was the reasonably identifiable target of the article. As such, he was personally and specifically defamed. The defendant admits that any First Amendment privilege is inapplicable in that instance.

In summary, it is recommended as follows:

(1) that, because the plaintiffs cannot sustain a claim under the group libel theory, the motions for summary judgment in *O'Brien, et al. v. Williamson Daily News*, Nos. 88–385 and 88–388, be granted as to all defendants and that action dismissed.

(2) that, because no negligence can be shown by their merely reprinting the AP wire service news story, the motions for summary judgment of defendants Appalachian Newspapers, Louisville Courier–Journal/Louisville Times, Ottaway Newspapers, and Lexington Herald–Leader in *Hunt v. Williamson Daily News*, No. 88–427, be granted and those defendants dismissed.

(3) that the motions for summary judgment of defendants Associated Press, Williamson Daily News, and Cindy Walters in *Hunt v. Williamson Daily News*, No. 88–427, be denied.

Particularized objections to this Report and Recommendation must be filed within ten (10) days of the date of service of the same or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir.1984), *aff'd*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wright v. Holbrook*, 794 F.2d 1152, 1154–55 (6th Cir.1986). A party may file a response to another party's objections within ten (10) days after being served with a copy thereof. Rule 72(b), Fed.R.Civ.P.