Sandra **Bolalin**, et al.,
Plaintiffs/Appellants,
v.
**Guam Publications, Inc.,**
Doing Business as Pacific Daily News,
and Marshall Santos,
Defendants/Appellees,

---

[6] See note 3, *supra.*

176

and Richard Ceyzyck,
Defendant.
Appeal No. 93-005
Civil Action No. 92-0902
September 9, 1994

Argued and Submitted October 7, 1993

Counsel for appellants: Robert J. O'Connor and Michael W. Dotts, Saipan.

Counsel for appellees: Donald C. Williams, Saipan (Carlsmith, Ball, Wichman, Murray, Case, Mukai & Ichiki).

BEFORE: DELA CRUZ, Chief Justice, and VILLAGOMEZ and ATALIG, Justices.

ATALIG, Justice:

An undefined group of 1,089[1] waitresses ("plaintiffs") appeals from a trial court dismissal of its claims for defamation and false light invasion of privacy against Marshall Santos ("Santos") and his employer, Guam Publications, Inc., doing business as Pacific Daily News ("PDN").

We hold that the plaintiffs failed to allege sufficient facts supporting either claim against Santos and PDN (collectively "defendants"), and affirm the dismissal under Com. R. Civ. P. 12(b)(6).

## ISSUES PRESENTED AND STANDARDS OF REVIEW

I. Whether the trial court erred in applying the rules of the common law as expressed in the Restatement;

II. Whether the trial court erred in dismissing the claim for defamation under Com. R. Civ. P. 12(b)(6) for failure to allege sufficient facts showing that statements were made "concerning" any individual plaintiff, under RESTATEMENT (SECOND) OF TORTS [hereinafter TORTS] §§ 558, 564A (1977);

III. Whether the trial court erred in dismissing the claim for false light invasion of privacy under Com. R. Civ. P. 12(b)(6) for failure to allege sufficient facts showing that statements were made "concerning" any individual plaintiff under TORTS §§ 564A, 652E.

 Whether the trial court erred in applying the common law is a legal question reviewable de novo. *See Yoo v. Quitugua*, 4 N.M.I. 120, 122 (1994).

 The propriety of a dismissal for failure to state a claim is also reviewed de novo. *See Govendo v. Micronesian Garment Mfg., Inc.*, 2 N.M.I. 270, 283 (1991). For purposes of a Com. R. Civ. P. 12(b)(6) motion, we view "the complaint in the light most favorable to the plaintiff[s]." *Cepeda v. Hefner*, 3 N.M.I. 121, 127-28 (1992) (citing *Govendo*, 2 N.M.I. at 283)). All well-pled facts will be taken "as true" and reasonable inferences shall be drawn therefrom. *In re Adoption of Magofna*, 1 N.M.I. 449, 454 (1990).[2]

---

[1] There are 89 named plaintiffs and 1,000 "Jane Does" listed in the amended complaint.

[2] The complaint must contain either (1) direct allegations on "every material point necessary to sustain a recovery on any legal theory," *or* (2) allegations "from which an inference could fairly be drawn that the evidence of these material points will be introduced at trial." *Cepeda v. Hefner*, 3 N.M.I. 121, 127 (1992) (quoting *In re Adoption of Magofna*, 1 N.M.I. 449, 453-

## FACTUAL AND PROCEDURAL BACKGROUND

The eighty-nine named plaintiffs are Filipina waitresses working in bars and karaoke clubs located in the Commonwealth of the Northern Mariana Islands ("CNMI"). On July 10, 1992, PDN published an article, written by PDN reporter Santos, entitled *Prostitution in CNMI Called Health Threat* ("article").[3] The article stated, in pertinent part:

> [Richard Ceyzyk said] "[w]e know that prostitution is a growing industry. Many of the bars have just gone whole hog in this industry . . . ."
>
> The [World Health Organization] report stated that when the study was conducted in December and January, there were 113 bars, massage parlors and karaoke clubs on Saipan that served as points of contact for prostitution.
>
> Ceyzyk . . . estimated that there are now about 125 of these establishments, each having at least 25 female prostitutes, which adds up to about 3,125 prostitutes on an island of fewer than 50,000 people.
>
> . . . .
>
> Most of the prostitutes are Filipinos, with a sprinkling of Koreans, Chinese and Thais. They are contract workers who enter the commonwealth as waitresses, and their average length of stay is from one to two years.
>
> . . . .
>
> Ceyzyk said many married island men go into these parlors, and if there is an HIV-infected person among the commercial sex workers, and the men refuse to use condoms, then the infection will spread . . . .
>
> . . . .
>
> What further complicates matters for CNMI public health officials is that some prostitutes perceive HIV and AIDS as their fate, Ceyzyk said.
>
> "They say, 'Well, I'm a prostitute, and if I die of a sexually transmitted disease, then it's my fate,'" [Ceyzyk] said. . . .
>
> Practically all of the women live in barracks, most of which are located in secluded parts of the island. Ceyzyk said most lack televisions and radios, and the women do not read newspapers. Consequently, education and awareness about sexually transmitted diseases through advertising is ineffective.

*Id.* at 1, 4.

On July 27, 1992, the plaintiffs filed a complaint against the defendants and Richard Ceyzyk alleging that the article was defamatory as to them. The complaint was amended on September 18, 1992, to include a second cause of action for false light invasion of privacy.

The plaintiffs alleged in the amended complaint that the statements were defamatory and that "[e]ach of the Plaintiffs herein were sufficiently identified in the . . . article as persons engaged in prostitution."[4] They further alleged that "[e]ach of the defamatory statements was understood by members of the public to impute to the Plaintiffs as a whole and to each individual Plaintiff serious sexual misconduct . . . [and t]he article was widely published in the Commonwealth and those who read the article understood it to apply to the Plaintiffs." Finally, they averred that the statements were false, that the defendants' conduct was tantamount to gross and reckless negligence, and that they suffered loss of reputation and mental suffering as a result of the article.[5]

As to their claim for false light invasion of privacy, the plaintiffs realleged the above allegations and averred that "[t]he statements . . . portrayed Plaintiffs and each of them in a false light by describing them as prostitutes . . . ."[6] They also asserted that "[e]ach of the false statements was understood by members of the public to

54 (1990)). Conclusory allegations do not suffice, however, to bolster the sufficiency of a claim unless, in light of previous case law, it is reasonable to infer that evidence may be brought which will bolster the claim. *See Cepeda*, 3 N.M.I. at 127 (allegation that transaction violated N.M.I. Const. art. XII was conclusory and not direct allegation for purpose of prima facie elements but sufficient, in light of previous case law, to allow reasonable inference of claim).

[3] Marshall Santos, *Prostitution in CNMI Called Health Threat* [hereinafter "article"] at 1, Pacific Daily News, July 10, 1992, *in* Appellants' Brief, addendum at 1.

[4] Amended Complaint for Defamation and Invasion of Privacy [hereinafter "Amended Complaint"] at 4, *Bolalin v. Guam Publications, Inc.*, Civ. No. 92-902 (N.M.I. Super. Ct. filed Sept. 18, 1992), *in* Appellants' Excerpts of Record at Excerpt 2.

[5] *Id.* at 5.

[6] *Id.* at 6.

impute to the Plaintiffs serious sexual misconduct . . . and those who read the article understood it to apply to the Plaintiffs."[7]

The plaintiffs prayed for general damages of no less than $10,000 each, punitive damages, attorney fees and costs, and "other relief" the court deemed appropriate.

On October 9, 1992, the defendants jointly filed a motion to dismiss for failure to state a claim, pursuant to Com. R. Civ. P. 12(b)(6).[8] On December 3, 1992, the trial court dismissed both claims against the defendants under that rule for failure to allege sufficient facts showing that the article was "concerning" any individual plaintiff in the group.[9] The plaintiffs timely appealed.

## DISCUSSION

■ The plaintiffs contend that the trial court should not have applied Restatement provisions to their claims for defamation and false light invasion of privacy. First, they argue that Article I of the CNMI Constitution provides for a cause of action for defamation, and therefore precludes the application of the rules of common law as expressed in the Restatements to that claim. Additionally, they argue that application of Restatement provisions under 7 CMC § 3401[10] is unconstitutional.[11]

---

[7] Id. at 6-7.

[8] There is no evidence in the record before us that defendant Ceyzyk was served with the summons and complaint, or that he filed either an answer to or Com. R. Civ. P. 12(b)(6) motion against the plaintiffs' claims.

[9] In its analysis, the court stated that the plaintiffs failed to "close the numerical size" of the group under RESTATEMENT (SECOND) OF TORTS [hereinafter TORTS] § 564A(a) (1977). *Bolalin v. Guam Publications, Inc.*, Civ. No. 92-0902 (N.M.I. Super. Ct. Dec. 3, 1993) (opinion and order at 12).

[10] In all proceedings, the rules of the common law, as expressed in the restatements of the law approved by the American Law Institute and, to the extent not so expressed as generally understood and applied in the United States, shall be the rules of decision in the courts of the Commonwealth in the absence of written law or local customary law to the contrary .
. . .

7 CMC § 3401.

[11] Specifically, they argue that (1) it violates the separation of powers doctrine under N.M.I. Const. art. II, § 1, (2) is tantamount to "legislation without representation" under N.M.I. Const. arts. VII and VIII, and denies CNMI residents the right

The defendants counter that the plaintiffs improperly raise these issues for the first time on appeal. We agree and decline to consider these issues, as the plaintiffs have advanced no reason why this Court should entertain them for the first time on appeal and the court's application of Restatement provisions was not "plain error." ·

Next, the plaintiffs disagree with the trial court's application of TORTS §§ 558, 564A & cmt. b for purposes of determining whether the allegedly defamatory statements in the article concerned any particular plaintiff. They contend that the court should have used an "intensity of suspicion" test to determine if the statements in the article concerned the plaintiffs, under which the court "should be sensitive to the small size of the Commonwealth."[12] The plaintiffs acknowledge, however, that the intensity of suspicion test they advanced below to determine if the statements concerned them is encompassed by TORTS § 564A.

Finally, the plaintiffs contend that the complaint does allege sufficient facts showing that the statements concerned each of them individually. We disagree and conclude that the trial court did not err in dismissing the plaintiffs' claims under Com. R. Civ. P. 12(b)(6).

## I. Applicability of the Restatements under 7 CMC § 3401

■ The issues the plaintiffs now raise regarding the application of the Restatements in the absence of written or customary local law, see *supra* notes 10-11 and accompanying text, were not raised before the trial court. There are three "narrow" exceptions to the rule that issues raised for the first time on appeal will not be considered. These are: (1) that a new theory or issue arose, during the pendency of the appeal, due to a change in the law; (2) the issue is legal and does not rely on a factual record; or (3) "plain error occurred and an injustice might otherwise result" if the appellate court does not consider the issue. *Hwang Jae Corp. v. Marianas Trading and Dev. Corp.*, 4 N.M.I. 142, 145 (1994) (citing *Santos v. Matsunaga*, 3 N.M.I. 221, 231 (1992)).

The plaintiffs have not addressed the propriety of raising these new issues in their appellate brief, nor have they addressed the defendants' concerns in a reply brief. The defendants suggest that the only possible basis for consideration of whether Restatement provisions are applicable is the second exception, that of a question of

---

to vote under N.M.I. Const. art. II, § 1, and (3) is void for vagueness.

[12] Appellants' Brief at 16-17.

law not relying on the factual record. They argue, however, that the plaintiffs' failure to advance reasons for our consideration of this issue should bar its consideration.[13] We agree, in part.

Simply because an issue being raised for the first time on appeal is purely legal does not automatically mean that we will entertain it. *Cf. Camacho v. Northern Marianas Retirement Fund*, 1 N.M.I. 362, 372-73 (1990) (declining to address purely legal but irrelevant issue); *Santos*, 3 N.M.I. at 231 (noting the three exceptions under which we "may" entertain new issues on appeal). While it is incumbent upon a party to address its failure to raise an issue below, we may review an issue of law if, after reviewing for plain error, we conclude that an injustice to that party might result. *Cf. Ada v. Sablan*, 1 N.M.I. 415, 426-27 n.12 (1990) (entertaining purely legal issue implicating plain error). We are not, however, convinced that this is the case here.

We decline to review the trial court's application of Restatement provisions to the matter below because, reviewing for "plain error," we are not satisfied that the court committed such error. Our courts have repeatedly applied the common law as expressed in the Restatements, pursuant to 7 CMC § 3401, when our own local written and customary law is silent regarding an issue presented.[14] Such was the case here. The trial court duly applied Restatement provisions in the absence of local law.[15]

## II. Com. R. Civ. P. 12(b)(6) Dismissal of the Defamation Claim

TORTS § 558 requires, as an element of a defamation, that the "false and defamatory statement [be] *concerning another*." (Emphasis added.) A statement is "concerning another"[16] where the recipient of the statement "correctly, or mistakenly but reasonably, understands that it was intended to refer to" the plaintiff. *Id.* § 564. This "concerning another" element is essential to an action for libel,[17] and must be sufficiently averred to defeat a Com. R. Civ. P. 12(b)(6) motion. *See Church of Scientology Int'l v. Time Warner, Inc.*, 806 F. Supp. 1157, 1159-60 (S.D.N.Y. 1992) (citing TORTS § 564A); *cf. Naantaanbuu v. Abernathy*, 746 F. Supp. 378, 380 (S.D.N.Y. 1990); *Noral v. Hearst Publications*, 104 P.2d 860, 862-63 (Cal. Dist. Ct. App. 1940).

Under the "group libel doctrine," the claim of an individual plaintiff in a group of plaintiffs is insufficient if the allegedly defamatory communication references only the group and not that individual. *Church of Scientology*, 806 F. Supp. at 1160 (citing TORTS § 564A(b); *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964); *Provisional Gov't. of Republic of New Afrika v. ABC, Inc.*, 609 F. Supp. 104, 108 (D.C.D.C. 1985)).[18]

Thus, while defamatory statements may have been published with respect to a group, no individual in that group may withstand a Com. R. Civ. P. 12(b)(6) motion unless he or she satisfies the "concerning another" element defined by TORTS § 564A. *See Church of Scientology*, 806 F. Supp. at 1160 (quoting TORTS § 564A(b) and applying identical Fed. R. Civ. P. 12(b)(6)); *see also* TORTS § 564A cmt. a.[19] Because the plaintiffs were not individually named in the article, we first examine whether, under TORTS § 558, the group has been defamed. If so, we then look to TORTS § 564A to

---

[13] Appellees' Brief at 32 (quoting *Gard v. United States*, 594 F.2d 1230, 1235 (9th Cir.), *cert. denied*, 444 U.S. 86, 100 S. Ct. 138, 62 L. Ed. 2d 90 (1979)).

[14] *See, e.g., Pangelinan v. Itaman*, 4 N.M.I. 114 (1994); *Riley v. Public Sch. Sys.*, 4 N.M.I. 85 (1994); *Sonoda v. Villagomez*, 4 N.M.I. 34 (1993); *In re Estate of Camacho*, 4 N.M.I. 22 (1993); *Ada v. K. Sadhwani's, Inc.*, 3 N.M.I. 303 (1992); *Lucky Dev. Co., Ltd. v. Tokai, U.S.A., Inc.*, 3 N.M.I. 79 (1992); *Fidelino v. Sadhwani*, 3 CR 282, 291 (N.M.I. Trial Ct. 1988) (applying Restatement provisions in defamation action). *Cf. In re Estate of Seman*, 4 N.M.I. 129, 131-32 (1994) (declining to apply Restatement provisions in presence of applicable contrary local law).

[15] We are not swayed by the plaintiffs' constitutional arguments.

[16] The plaintiffs' contention that the term "concerning another" is different from "of and concerning" is without merit. The Restatement and interpreting case law use the terms interchangeably.

[17] The defamatory material about which the plaintiffs complain is "[l]ibel [which] consists of the publication of defamatory matter by written or printed words, by its embodiment in physical form or by any other form of communication that has the potentially harmful qualities characteristic of written or printed words." TORTS, *supra* note 9, § 568(1).

[18] "[A] defamatory statement directed against a group or class does not generally give rise to a cause of action on behalf of its individual members." *Provisional Gov't of Republic of New Afrika v. ABC, Inc.*, 609 F. Supp. 104, 108 (D.C.D.C. 1985).

[19] "As a general rule no action lies for the publication of defamatory words concerning a large group or class of persons . . . and it cannot maintain the action; and no individual member of the group can recover for such broad and general defamation." TORTS, *supra* note 9, § 564A cmt. a.

determine if any individual in that group may recover. *See Church of Scientology*, 806 F. Supp. at 1160.[20]

After reviewing the record in this matter and the pertinent provisions of TORTS setting forth the elements of defamation and liability to individual group members, we conclude that the dismissal under Com. R. Civ. P. 12(b)(6) was appropriate.[21] The plaintiffs failed to allege sufficient facts showing that any individual member of the group of plaintiffs could recover under TORTS §§ 558 and 564A.

## A. TORTS § 558 Group Defamation Claim

■ Pursuant to TORTS § 558, the elements of a claim for defamation are:

> (a) a false and defamatory statement *concerning another*;
> (b) an unprivileged publication to a third party;
> (c) fault amounting at least to negligence on the part of the publisher; and
> (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

(Emphasis added.)

The pertinent statements in the article are: (1) there are now approximately 125 karaoke clubs, bars and massage parlors on Saipan; (2) these serve as contact points for prostitution; (3) Filipinas work at these establishments as either hostesses or waitress; (4) each of the establishments hires at least twenty-five prostitutes; (5) the majority of these prostitutes are from the Philippines; (6) nearly all the women live in barracks in secluded areas on Saipan; (7) the women are ill-informed, newswise; (8) the women are contract workers; (9) the

women arrive as waitresses to work for one to two years; and (10) one of the means of transmission of HIV is via prostitution.

■ Together, these statements imputing prostitution and positive HIV-status do appear to be libelous per se,[22] for which no showing of special harm is required. See *supra* note 22. They were communicated to third parties by publication via a widely-disseminated newspaper. The plaintiffs alleged fault amounting to negligence on the part of the defendants. Finally, the plaintiffs are part of the group to which the article referred. Thus, most of the elements of a group defamation claim, as outlined in TORTS § 558, have been satisfied for purposes of defeating a Com. R. Civ. P. 12(b)(6) motion. However, the plaintiffs failed to allege sufficient facts supporting liability of the defendants to any individual member of that group.[23]

## B. TORTS § 564A Tests for Liability for Defamation to Individual Group Members

■ TORTS § 564A sets forth two alternative tests under which the sufficiency of the "concerning another" element of a defamation claim is examined with respect to liability to individual members:

---

[20] In *Scientology*, the court quoted *id.* § 564A(b) and stated that the court must consider: "[1] whether the allegedly libelous statements directly or impliedly referred to [plaintiff] . . . ; [2] whether any reference to [plaintiff] in the Article arose solely from its status as one of the numerous entities that constitute the [plaintiff], thus implicating the group libel doctrine and, if these statements involved group libel, [3] whether [plaintiff] was referred to in any particular way so as to escape the constraints of the group libel." *Church of Scientology Int'l. v. Time Warner, Inc.*, 806 F. Supp. 1157, 1160 (S.D.N.Y. 1992).

[21] The defenses of truth and privilege did not come into play here because the defendants opted not to answer the plaintiffs' complaint but to file a Com. R. Civ. P. 12(b)(6) motion.

[22] The "libelous imputation of immorality" is actionable per se under TORTS, *supra* note 9, § 569. *See id.* cmt. f ("it is actionable per se to accuse by a libelous publication either a man or woman of adultery or fornication or to accuse another of keeping a house of ill fame or frequenting such a house"). Under TORTS § 569 "a written or printed imputation of any crime [involving moral turpitude or that is punishable by confinement] is libelous." *Id.* cmt. d. Actionable per se means that "the publication is of such a character as to make the publisher liable for defamation although no special harm results from it, unless the defamatory matter is true or the defamer was privileged to publish it." *Id.* cmt. b. As such, an allegation of special damages when a newspaper publication is libelous per se is not essential to making out a cause of action for libel. *See Stevenson v. Hearst Consol. Publications, Inc.*, 214 F.2d 902 (2d Cir.), *cert. denied*, 348 U.S. 874, 75 S. Ct. 110, 99 L. Ed. 688 (1954).

[23] We also note that the plaintiffs failed to allege that the publication was not privileged. While a defendant has the burden of proving a privilege, see TORTS, *supra* note 9, § 613(2) (*cited in Ross v. Bricker*, 770 F. Supp. 1038, 1044 (D.V.I. 1991)), that burden arises only where the issue is properly raised. TORTS § 613(2). Because TORTS § 558 sets forth the unprivileged nature of the publication as an element of defamation. *Zerpol Corp. v. DMP Corp.*, 561 F. Supp. 404, 408 (E.D. Pa. 1983) (citing TORTS § 558), the plaintiffs must have pled that the article was unprivileged.

One who publishes defamatory matter concerning a *group* or class of persons is subject to liability to an individual member of it if, but only if,

 (a) the group or class is so *small* that the matter can reasonably be understood to refer to the member, or

 (b) *the circumstances of publication reasonably give rise to the conclusion that there is particular reference to the member.*

(Emphasis added.)

 ■ These tests under TORTS § 564A are distinct and alternative.[24] Where a group is so large that a claim would fail under TORTS § 564A(a), "there may be circumstances that are known to the readers or hearers, [giving] . . . a personal application to [an] individual that he [or she] may be defamed as effectively as if . . . alone . . . named." *Id.* cmt. d.[25] In which instance, we look to the alternative test under TORTS § 564A(b). *See, e.g., Church of Scientology*, 806 F. Supp. at 1160; *cf. Michigan United Conservation Clubs v. CBS News*, 485 F. Supp. 893, 897-99 (W.D. Mich. 1980) (summary judgment against group plaintiffs upheld where, under TORTS, no personal application to any one of one million plaintiffs; citing TORTS §§ 558, 564 and 564A), *aff'd*, 665 F.2d 110 (6th Cir. 1981).

 ■ In their amended complaint, the plaintiffs alleged that "[e]ach of the Plaintiffs herein were sufficiently identified in the . . . article as persons engaged in prostitution."[26] They further alleged that "[e]ach of the defamatory statements was understood by members of

the public to impute to the plaintiffs as a whole and to each individual Plaintiff serious sexual misconduct . . . [and that] those who read the article understood it to apply to the Plaintiffs."[27]

These "allegations" are insufficient to state a claim for relief for defamation because they are conclusory statements and not direct allegations. See *supra* note 2. Furthermore, the statements in the article are insufficient to identify any of the individual plaintiffs, apart from being referenced solely as a member of the group. Finally, from the record before us it does not appear that the plaintiffs at any time filed any affidavit or other evidence buttressing their contention that they, individually, were understood under the circumstances of the publication, by recipients of the statements, to have been implicated in the article.[28] Without more, we are unable to conclude as a matter of law that a fact finder could understand the article to point to any individual member of the group, either directly or by reasonable inference.[29]

## III. Com. R. Civ. P. 12(b)(6) Dismissal of False Light Invasion of Privacy Claim

The plaintiffs alleged that the statements in the article "portrayed Plaintiffs and each of them in a false light by describing them as prostitutes . . . [and that] [e]ach of the false statements was understood by members of the public to impute to the Plaintiffs serious sexual misconduct." Amended Complaint at 6-7, *Bolalin v. Guam Publications, Inc.*, Civ. No. 92-092 (N.M.I. Super. Ct. filed Sept. 18, 1992). They contend that the trial court erred in applying the "concerning another" requirement under TORTS § 564A for group defamation to their claim for false light invasion of privacy.[30]

---

[24] While the alternative test under TORTS, *supra* note 9, § 564A was only briefly addressed by the court in dicta, the court noted that the allegations in the complaint were not enough to "generally allege that the libellous statement was made 'of and concerning' . . . each of them," *Bolalin v. Guam Publications, Inc.*, Civ. No. 92-0902 (N.M.I. Super. Ct. Dec. 3, 1992) (opinion and order at 14) (quoting *Neiman-Marcus*, 13 F.R.D. 311, 317 (S.D.N.Y. 1952), in turn citing *Noral v. Hearst Publications, Inc.*, 104 P.2d 860, 862 (Cal. Ct. App. 1940)), for purposes of determining if the statement could be "reasonably understood to refer to any member of the group as a matter of law." *Bolalin* (opinion and order at 15).

[25] TORTS, *supra* note 9, § 564A comment b states that when "[i]t is not possible to set definite limits as to the size of the group or class . . . the cases in which recovery has been allowed usually have involved numbers of 25 or fewer." This size constraint is not applicable to the alternative test under which defamation to an individual member of a larger group may be found.

[26] Amended Complaint, *supra* note 4, at 4.

[27] *Id.* at 5.

[28] Under Com. R. Civ. P. 6(d) and 12(b), affidavits may be filed in opposition to a Com. R. Civ. P. 12(b)(6) motion.

[29] We will not consider any allegation in the plaintiffs' appellate brief not presented before the Superior Court.

[30] The court cited *Michigan United Conservation Clubs v. CBS News*, 485 F. Supp. 893, 903-903 (summary judgment), *aff'd*, 665 F.2d 110 (6th Cir. 1981), and imposed a requirement that for a prima facie case for false light invasion of privacy to be made, the statements contained in the article must be concerning the plaintiffs under TORTS, *supra* note 9, § 564A.

We conclude that the allegations of the plaintiffs on this claim are insufficient to state a claim for relief.[31] ▮ According to TORTS § 652A:

(1) One who invades the right of privacy of *another* is subject to liability for the resulting harm to the interest of the other.

(2) The right of privacy is invaded by

. . . .

(d) *publicity that unreasonably places the other in a false light before the public*, as stated in § 652E.

(Emphasis added.)

TORTS § 652E provides that:

One who gives publicity to a matter *concerning another* that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if:

(a) the false light in which the other was placed would be highly offensive to a reasonable person, and

(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

(Emphasis added.)

▮ A false light claim is alternative to a defamation claim, and may arise from the same allegedly tortious action. *See id.* cmt. b. Nonetheless, with respect to a Com. R. Civ. P. 12(b)(6) motion against both claims, a court must examine the plaintiff(s) allegations with respect to each claim distinctly, given the differences between the prima facie elements of those claims. *Compare, e.g.,* TORTS §§ 558, 559 (liability for harm to reputation) *with* 652A(2)(d), *and* TORTS §§ 652E & cmt. c (liability for offensive harm to privacy interest), 558(c) (fault amounting to at least negligence) *with* 652E(b) (knowledge or reckless disregard); *see also White v. Fraternal Order of Police*, 909 F.2d 512, 518 (D.C. Cir. 1990) (discussing claims together but noting differences between damages claims designed to redress).

▮ However, like the defamation claim, liability for a false light invasion of privacy claim arises from a

matter "concerning another." *See Michigan United*, 485 F. Supp. at 904 (noting similarity); *cf. Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1018 (1st Cir.) (citing TORTS § 652E cmt. b), *cert denied*, 488 U.S. 821, 109 S. Ct. 65, 102 L. Ed. 2d 42 (1988). While TORTS does not specifically define this term for purposes of a false light claim, it does specify that this claim is personal and individual. TORTS § 652I & cmt. a;[32] *cf. New Afrika*, 609 F. Supp. at 108 ("[d]efamation is personal"). Thus, to subject a defendant to liability, there must be some showing that the publicity pointed to individual members of the group.

▮ With respect to the Com. R. Civ. P. 12(b)(6) motion, again, the allegations made by the plaintiffs are conclusory and the statements in the article are insufficient to show that any one of the plaintiffs was placed in a false light which would be highly offensive to a reasonable person. Construing the complaint liberally, we are unable to conclude that the plaintiffs have shown that the statements concerned any one of them individually.[33]

## CONCLUSION

Based on the foregoing, we **AFFIRM** the trial court's dismissal of the group defamation and false light invasion of privacy claims against defendants Santos and PDN under Com. R. Civ. P. 12(b)(6). Further, we **REMAND** this matter for disposition of the remaining causes of action against defendant Richard Ceyzyk.[34]

---

DELA CRUZ, Chief Justice, concurring:

I write separately to emphasize that the only issue before us is whether the PDN article makes a particular reference to any one of the plaintiffs as members of a group. RESTATEMENT (SECOND) OF TORTS § 564A (1977) (hereinafter "§ 564A") governs our review.

---

[31] Because the plaintiffs' false light claim is insufficient under Restatement provisions pertinent to that claim, we need not reach the issue of whether the trial court erred in applying TORTS, *supra* note 9, § 564A to their false light claim.

[32] While TORTS, *supra* note 9, suggests that some of the restrictions on defamation claims are applicable to false light claims, the "concerning another" test under TORTS § 564A is not specifically noted. *See* TORTS § 652E cmt. e.

[33] We also note that the plaintiffs failed to aver that the allegedly false light into which they were placed was "highly offensive to a reasonable person." This element is crucial in setting forth a claim for relief for false light invasion of privacy. *See* TORTS, *supra* note 9, § 652E(a) & cmt. c.

[34] Because the trial court's opinion and order did not address the claims as against Ceyzyk, we remand for further proceedings on those outstanding claims. See *supra* note 8.

Assuming that the article is indeed false and defamatory, and assuming that the three other elements needed to establish liability for defamation are satisfied, the statements at issue must specifically concern an identifiable plaintiff. Because there are, at most, eighty-nine named plaintiffs, the first basis under § 564A fails, as the group is too large. *See id.* cmts. a, b; *see also Neiman-Marcus v. Lait*, 13 F.R.D. 311, 315 (S.D.N.Y. 1952). We therefore review the allegations of the defamation claim to determine whether, notwithstanding the fairly large size of the group, the "circumstances of publication" reasonably give rise to the conclusion that there is "particular reference" to the members of the group bringing this action. Reviewing the allegations in the light most favorable to the plaintiffs, I am not satisfied that the allegations sufficiently set forth facts which, if proven, would suggest liability.

The law is quite clear that liability for group defamation must be based on a "particular reference" to each named plaintiff. "Group libel actions require the libelous statements to be applicable to every member of the class, not merely to an aggregate body of persons." *O'Brien v. Williamson Daily News*, 735 F. Supp. 218, 220 (E.D. Ky 1990), *aff'd* 931 F.2d 893 (6th Cir. 1991). The following cases cite § 564A for this proposition: *Weatherhead v. Globe Int'l, Inc.*, 832 F.2d 1226 (10th Cir. 1987); *Ginert v. Howard Publications, Inc.*, 565 F. Supp. 829 (N.D. Ind. 1983); *O'Brien*, 735 F. Supp. 218; *Loeb v. Globe Newspaper Co.*, 489 F. Supp. 481 (D. Mass. 1980).

As to the named plaintiffs here, the alleged facts that they work at night clubs as waitresses or hostesses and are members of an identifiable nationality are insufficient to establish the requirement that the PDN article was, in fact, referring to any one of them individually. The PDN article did not make any particular reference to any of the plaintiffs in this action.

Certainly the suit fails as to the 1,000 "Jane Doe" plaintiffs. As to the named plaintiffs, the article does not impugn the reputation of any identifiable member of this loosely-formed group. In order for this suit to proceed, the article must have had a personal application to at least one of the members. *See* § 564A cmt. d. It did not.

For the same reasons noted with respect to the claim for group defamation, the false light invasion of privacy claim also fails. As to this claim, the allegations must show that the negative publicity concerning the group was made in reference to some identifiable member. *Michigan United*, 485 F. Supp. at 904. Here, the allegations do not establish that the article directly or indirectly refers to any of the named plaintiffs. Thus, no one plaintiff can assert a claim for invasion of privacy,

so as to suggest that the conduct of the defendants put any one of them in a false light.

I, therefore, concur in the judgment to affirm the Com. R. Civ. P. 12(b)(6) dismissal of both claims.